[Decided January 22, 1887.]

## JOHN E. BINGHAM *v.* THE CITY OF WALLA WALLA AND J. B. BROOKS, STREET COMMISSIONER.

1. PUBLIC LANDS — TOWN SITES — ENTRY AND ACTUAL USE — 14 U. S. STATS. AT LARGE, 541. — Under the provisions of the act of Congress approved March 2, 1867, known as the town-site act (14 U. S. Stats. at Large, 541), the lots, blocks, streets, and alleys contemplated by the act, and as to which, on the entry of the lands, the interest of the public attaches, are those lots, blocks, streets, and alleys which exist as a fact at the time of the entry, either by actual use, or by consent and acquiescence of the occupant affected.

2. ESTOPPEL — RECITALS IN DEED. — A recital in a deed which is collateral to the purposes for which a action is brought cannot be relied on to create an estoppel, and is conclusive of the facts stated only in an action of which the deed itself is the foundation or defense.

3. SAME — ACTS AND CONDUCT OF GRANTEE — CITY AUTHORITIES. — Where city authorities are informed by a grantee in a deed that he does not intend to relinquish his right to land not conveyed by them until paid for the same, the acceptance by the grantee of the deed conveying only a portion of the land, the city claiming the other portion, will not operate as an estoppel against the grantee, or those claiming under him, from afterwards laying claim to the part not conveyed.

4. TRUSTS — INJUNCTION AGAINST TRUSTEE. — A court of equity has power ·and ought to interfere by injunction to control the action of a trustee during the pendency of a trust, when his acts are prejudicial to the rights of his *cestui que trust.*

5. DAMAGES — PROSPECTIVE PROFITS. — In a suit by a lot-owner to restrain a city, by injunction, from tearing down a building which had been erected by the plaintiff, damages for prospective profits, which he might have received had he been permitted to erect the same, are too remote, and cannot be recovered.

APPEAL from the District Court holding terms at Walla Walla. First District.

The material facts are fully stated in the opinion of the court.

*Messrs. Allen & Crowley,* and *Mr. H. T. Bingham,* for the Appellant.

The facts stipulated and proven show that the city acquired the legal title to the land in controversy by patent from the United States, dated July, 1869, under

the act of Congress entitled "An act for the relief of the
inhabitants of cities and towns upon public lands," ap-
proved March 2, 1867. (U. S. R. S., sec. 2387; 14 U. S.
Stats. at Large, 541.) Those in possession of the land
when the entry was made by the city are the persons
for whom the land is held in trust. (*Castner* v. *Gunther*,
6 Minn. 119; *Cofield* v. *McClellan*, 16 Wall. 334; *Ricks*
v. *Reed*, 19 Cal. 576; *City of Cincinnati* v. *White*, 6 Pet.
440; *Hussey* v. *Smith*, 109 U. S. 22; *Stringfellow* v. *Cain*,
109 U. S. 610. The moment the land was entered, the
trust vested an absolute right in the beneficiaries. The
legislature cannot, under pretense of providing rules for
the execution of the trust, change its character or deprive
those for whom it was intended of any benefits of the
trust. (*Lechler* v. *Chapin*, 12 Nev. 65; *Winfield Town Co.*
v. *Maris*, 11 Kan. 151.) The city of Walla Walla ac-
quired no interest in the soil, or title to the land platted
or used as a street, by virtue of its incorporation by an act
of the territorial legislature. There was an express inhi-
bition by Congress upon the power of the legislature in
this respect. (Organic Act, sec. 1851.) "The clause in the
Organic Act was intended to forbid the territorial legis-
lature passing any law to dispose of the public lands as
if on its own authority, or intermeddling with the mode
by which the general government should dispose of them,
or assuming any authority or jurisdiction in respect of
that business." (*Per* Miller, J., *Root* v. *Shields*, 1 Wool.
360.) The filing of the plat by the county authorities, and
subsequently by the city, had not in itself any legal effect.
There was no authority in law for filing such plats.
The strip in controversy was not then and never has
been in public use as a street. The county and corporate
authorities could not, therefore, by platting or otherwise,
dedicate it. The act of dedication presupposes ownership
and the right to dedicate, and this they did not have.
(Angell on Highways, sec. 132; *Porcher* v. *Ashley*, 5
Mont. 86; *Weisberger* v. *Tenny*, 8 Minn. 405.) The act of

Congress under which the patent was made to the city is entitled "An act for the relief of the *inhabitants* of cities and towns upon public lands." Congress in the passage of the several town-site laws "had in view the individual interests of *bona fide* settlers upon small parcels of public lands, as well as the common interests of a community of persons so contiguously settled as to justify the establishment of a town or city, and did not intend the act for the especial benefit of municipal organizations or corporations; and to so construe the law as to authorize under its sanction an appropriation of private property to public use without compensation, or an arbitrary confiscation of rights of property for the benefit of municipal associations or corporations, would be a manifest perversion of the leading object and purpose of the law." (*Jones* v. *City of Petaluma,* 38 Cal. 406; *Winfield Town Co.* v. *Maris,* 11 Kan. 151.) The appellant is not estopped from asserting his claim to the property. An estoppel in this case to be effective must arise either as an estoppel by deed, in Baker accepting a deed from the city, or as an estoppel *in pais,* from the acts of appellant and his predecessors relative to this property. It is an essential element to the estoppel by deed, that the deed itself should be a valid instrument; a void instrument, though under seal, will not work an estoppel. (Bigelow on Estoppel, 3d ed., 286; *Merriam* v. *Boston,* 117 Mass. 241; *Pells* v. *Webquish,* 129 Mass. 469; *James* v. *Wilder,* 25 Minn. 305.) Another reason why the deed from the city to Baker cannot operate as an estoppel upon Baker or his grantee is, that it is a deed poll, — the deed of the grantor only. It is not the deed of Baker, but of the city only, by whom it was executed. Estoppel in general only applies to the grantor. (Bigelow on Estoppel, 3d ed., 293; Herman on Law of Estoppel, sec. 317.) This rule obtains as applied to this appellant, as he does not claim to have acquired his title through the city. He owes no faith or allegiance to the grantor, and he

does no wrong when he treats him as an utter stranger to the title. The grantee may hold adversely to his grantor. (*Osterout* v. *Shoemaker*, 3 Hill, 513; *Blight's Lessee* v. *Rochester*, 7 Wheat. 535; Bigelow on Estoppel, 294, 295, note; Herman on Law of Estoppel, sec. 532.)

The estoppel does not apply to what is mere description in the deed, and not an essential averment. (1 Greenl. Ev., 12th ed., sec. 26.) In order to raise an estoppel *in pais*, and to justify the intervention of a court of equity, it is necessary to establish not only the misrepresentation or concealment, but also that it has been in a matter of substance or of importance to the interests of the other party, and that it has actually misled him. For if the misrepresentation was of a trifling or immaterial thing, or if the party alleging did not in fact trust in it, or was not misled by it, . . . . or if it was matter of fact open to the knowledge of both parties, . . . . in these and like cases equity will not grant relief. (Bigelow on Estoppel, 476; Herman on Law of Estoppel, sec. 442.) For the application of the doctrine of equitable estoppel, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud, by which another has been misled, to his injury. To the enforcement of an estoppel of this character, with respect to the title of property, such as will prevent a party from asserting his legal rights, and the effect of which will be to transfer the enjoyment of the property to another, the intention to deceive and mislead, or negligence so gross as to be culpable, should be clearly established. (*Brant* v. *Virginia Coal and Iron Co.*, 93 U. S. 336; *Boggs* v. *Merced Mfg. Co.*, 14 Cal. 366; Herman on Law of Estoppel, secs. 411–415.) In order to raise an express or implied admission of one party from the rank of evidence to the dignity of estoppel, it must not only be shown that its retraction will be injurious to the other party, but that the injury results

from the course of action induced by the admission. (Herman on Law of Estoppel, sec. 412.) The principles which estop a man from claiming what is conceded to be his own property are highly penal in their character, and should not be enforced unless there is a concurrence of circumstances such as are necessary to the creation of an equitable estoppel. (Herman on Law of Estoppel, sec. 425; 2 Smith's Lead. Cas. 511, note; 2 Pomeroy's Eq. Jur., sec. 804 et seq., and notes.)

*Mr. John L. Sharpstein*, for the Appellees.

Whether the plats were acknowledged or not goes only to the question as to their being entitled to record. When adopted by the city authorities and inhabitants, they became the town plats. The legislature of this territory legalized town plats not properly acknowledged. (Code, sec. 2338.) And made all streets shown on plats public streets. (Stats. 1877, p. 299.) The statutes of the United States contemplate that there should be lots, streets, and alleys, and that they should be platted prior to the issuing of the patent. (U. S. R. S., sec. 2394.) The acts of Congress, and the issuing of the patent by the United States after the town site was platted, were a dedication of all streets and alleys shown on these plats. (*Hoadley* v. *San Francisco*, 50 Cal. 265; *Parcher* v. *Ashby*, 1 Pac. Rep. 204.) There can be a dedication by one not the owner of the fee. (*Cincinnati* v. *White's Lessees*, 6 Pet. 431. The deed of the city to Baker when accepted by him was as much his deed and as binding on him as on the city. (*Hubbard* v. *Marshall*, 50 Wis. 322; *Hutchinson* v. *Chicago & N. W. R. R. Co.*, 37 Wis. 582; *Finley* v. *Simpson*, 22 N. J. L. 311.) The appellant was bound to know the law, that a street cannot be vacated except in the manner provided by statute. (Stats. 1863, p. 433, sec. 4; 2 Dillon

on Municipal Corporations, sec. 660.) The filing of
the claim by Patton for lot 1, block 13, according to
the town plat, the deed of the city to Baker by refer-
ence to the plat and street, and the deed of William
Stephens to appellant for a part of lot 1, in block 13,
according to the plat on file in the auditor's office,
each is and amounts to an irrevocable dedication of
all streets and alleys shown on the plats, whether
properly acknowledged or not. (2 Dillon on Muni-
cipal Corporations, sec. 640, and note; *Carter* v. *Port-
land,* 4 Or. 339; *Rowan's Ex'rs* v. *Portland,* 8 B. Mon.
232; *Hurley* v. *Mississippi & R. River Boom Co.,* 24 N.
W. Rep. 917; *Bartlett* v. *Bangor,* 67 Me. 46; *City of
Walla Walla* v. *Moore,* 2 Pac. Rep. 187; *Pettibone* v.
*Hamilton,* 40 Wis. 402.) The city cannot be guilty of
laches or to have slept upon its rights until the stat-
ute of limitations has run. (*Hoadley* v. *San Francisco,*
50 Cal. 265; *Lindsey* v. *Miller,* 6 Pet. 666 (10 Curtis,
304); *Sohn* v. *Watterson,* 17. Wall. 596.) A city cannot
be estopped from claiming its property by the taxation
of the same as private property, and the collection of
the tax thereon. (*Rosirie* v. *Boston,* 4 Allen, 57; *McFar-
land* v. *Kerr,* 10 Bosw. 249; *St. Louis* v. *Gorman,* 29 Mo.
593; *Berry* v. *Bickford,* 9 Am. & Eng. Corp. Cas. 470;
*Elsworth* v. *Grand Rapids,* 27 Mich. 280.) The legisla-
ture is empowered under the town-site act to make
regulations for the disposal of lots; if these regula-
tions are reasonable, no title can be acquired except
by compliance with them. Any regulation providing
for a sale of streets would be void. (U. S. R. S., sec.
2391; *Cofield* v. *McClellan,* 16 Wall. 331; *Dupond* v. *Bar-
stow,* 45 Cal. 446.) The appellant cannot in any event
recover more than nominal damages. The rent which
he might have received from a building which he might
have built with money which he had arranged to procure
is too remote to be recovered. (1 Sedgwick on Damages,
pp. 266–268, note *c*, p. 267, and note *a*, p. 268; *Bridges*

v. *Lanham*, 14 Neb. 369; S. C., 44 Am. Rep. 121; *Pollock* v. *Gantt*, 69 Ala. 373; S. C., 44 Am. Rep. 519.

Mr. Justice TURNER delivered the opinion of the court.

A town or village sprang up on what is now the site of the city of Walla Walla as early as the year 1858. During that year the town or village attained a population of two or three hundred persons, and it has since continued to increase in population, until at the present time it has attained a population of at least five thousand persons. At the time its occupancy as a town or village began, its site was a part of the public domain of the United States, and within Walla Walla County. In the year 1858 or 1859 the board of county commissioners of said county applied to make entry of the lands covered by the town site under the act of Congress entitled "An act for the relief of citizens of towns upon lands of the United States, under certain circumstances," approved May 23, 1844. On the seventh and eighth days of November, 1859, the said board of county commissioners at its regular session established the county seat of Walla Walla County at Walla Walla, and made certain regulations concerning the survey of said town site, the direction and width of streets, the sale of town lots, etc. Pursuant to the regulations thus made, the county surveyor made a survey of said town site, laying off streets therein; and the result of this work was embodied in a plat which was deposited in the office of the county auditor. In the year 1867, the city of Walla Walla having been incorporated in the mean time, another survey was made by direction of the city authorities, and a plat thereof was filed in the office of the county auditor. This plat was identical with that made under the direction of the county commissioners, except that the plat of the county commissioners exhibited certain obstructions existing in the streets, caused by lands in possession of actual occupants impinging on said streets, which ob-

structions the city plat does not show. Many of these obstructions existed long after the entry of the town site, and were finally removed by condemnation proceedings instituted by the city, or by private negotiations at the instance of the city.

Before action was taken in the general land-office on the application of the county commissioners to enter under the town-site act of 1844, that act was repealed by the act of July 1, 1864 (13 U. S. Stats. at Large, p. 343), and patent was finally granted to the corporate authorities of the city of Walla Walla, under the provisions of the act of Congress approved March 2, 1867 (14 U. S. Stats. at Large, p. 541). The patent was dated July 20, 1869.

In the year 1858, one W. H. Patten, a citizen of the United States and a resident of the town or village of Walla Walla, entered upon and occupied a lot of land fronting on Main Street, in the town of Walla Walla, twenty-three feet, and extending back southerly one hundred and twenty feet, with a uniform width of twenty-three feet. Patten erected a building thereon immediately, covering the entire frontage, and extending back with a uniform width of seventy feet. The remainder of the lot was fenced. Patten conveyed all his interest in the lot to one D. S. Baker, November 22, 1862, Baker being a person qualified to hold lands under the town-site act. Baker conveyed the lot to one W. S. Stephens, on July 22, 1874, and Stephens sold the lot to appellant in the month of May, 1883. A strip of this lot of land, eleven feet wide, and extending back the entire depth of the lot, is included in what is designated as First Street on the two plats before mentioned, but up to the time of the interference of the city authorities hereafter mentioned, the whole of said lot has been in the continuous, exclusive, and undisturbed possession of said Patten and his grantees, either by themselves or their tenants. No part of said strip of land, from the

time Patten settled and built on it to the present time, has ever been in actual use as a part of First Street, but on the contrary, as before said, has always been in the actual and adverse possession of Patten and his grantees, down to the appellant in this case. On the twenty-third day of February, 1866, D. S. Baker, the grantee of Patten, made application to the city authorities of Walla Walla for a deed to said lot of land, pursuant to the directions of an act of the legislature of Washington Territory, entitled "An act conferring certain powers on the city of Walla Walla," approved December 11, 1865, and the provisions of an ordinance of the city of Walla Walla passed pursuant to the last-named act. In this application for a deed, the lot was described as bounded on the east by First Street, "according to the official plat of the city." In the deed executed to the applicant and accepted by him, the lot conveyed is described as follows: "Commencing at a point on the south side of Main Street, distant forty-eight feet from the northeast corner of lot number 2 in said block 13, and running easterly on the south side of said Main Street, to the northeast corner of said block 13, a distance of twelve feet, more or less; thence southerly at right angles along the west side of First Street, one hundred and twenty feet to the north side of the alley in said block; thence westerly along the north side of said alley, twelve feet, more or less, to a point forty-eight feet distant from the southeast corner of lot number 2 in said block; and thence at right angles to the place of beginning, being the western fraction of lot number 1 in said block 13, less forty-eight feet off the west side of said lot."

It will be noticed that this conveyance omits the eleven-foot strip of land in controversy, and that the description of the part conveyed makes First Street the eastern boundary thereof. But Dr. Baker, in his testimony, which is not disputed or contradicted, says he insisted, at the time of making such application and receiving

said deed, that he was entitled to a deed for the remaining eleven (11) feet, and that he gave notice that he did not intend, by his action respecting the part conveyed to him, to waive his right to the balance, and that he was promised by the city authorities that he should be paid for the part not conveyed when the streets marked on the plats were opened, and that none of the cross-streets had then been opened, except a narrow crossing at what is now Second Street. In August, 1885, the building erected on said lot by Patten, to which additions had been made by subsequent occupants, was destroyed by fire. The appellant then caused the entire lot to be securely fenced, and thereafter made preparations to rebuild thereon, covering the entire frontage of the lot originally occupied. At this point the city of Walla Walla made claim that the strip of eleven feet in dispute was lawfully a part of First Street, and that the occupancy thereof by appellant was wrongful, and by and through its commissioner of streets it tore down the fence of appellant, and continued to tear it down as fast as rebuilt; forcibly interfered with his possession; and thereby rendered abortive his preparations to rebuild his structure on said land. The appellant, by the case made on the pleadings and proofs, seeks to have his title to said eleven-foot strip of land declared, to have the city of Walla Walla, its agents and servants, enjoined from further interference with his possession for damages for past trespasses, and for general relief. This general statement of the facts is sufficient to give an understanding of the points in controversy in the case.

The city of Walla Walla predicates its right to the land in controversy for use as a street on the following grounds: —

1. That the grant of title under the town-site act of 1867, after the town site was platted, was a dedication to the public by the United States of all streets and alleys shown on the town plats.

2. That the acceptance by Baker of the deed to a part of the Patten lot, by which a frontage of twelve feet only was conveyed, and in which the eastern boundary of the part conveyed was described as First Street, operated as an estoppel by deed, and precludes the grantees of Baker from denying that all of said lot not conveyed is rightfully a part of First Street.

3. If there is not an estoppel by deed, the conduct of Baker operates as an estoppel *in pais* against a denial that said land is a part of the street.

1. The town-site act of 1867 makes no regulation for the making and preservation of a plat of town sites entered under its provisions. The act of 1864 makes provision for such a plat, and that act was left in force by the act of 1867, but it will be readily seen by an examination of its provisions that they are wholly inapplicable to the act of 1867. However this may be, none of the provisions of the act of 1864 were complied with in the preparation or filing of the maps or plats in question. We must look, therefore, to the act of 1867 alone to determine what the rights of individual occupants are when the claims of such individuals come in conflict with the claims of the city to land as a street. In the construction of that act stress is laid by the city on the use of the word "lots" in said act, and it is said that there cannot be "lots" without streets on which lots can abut, and therefore that the act must have contemplated a survey of the prospective town into lots and blocks and streets before entry, and that the occupancy by individuals mentioned in the act was an occupancy of a piece of ground bearing relation to this survey as a lot. But we see nothing in the act to give the occupancy contemplated by the act so limited a meaning. The only place in the act where the word "lot" is used is in the following clause: "The execution of which trust, *as to the disposal of the lots in such town,* and the

proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated." This authority cannot relate to lands held by actual occupants, but evidently has relation to the lands included in the town site not in possession of actual occupants, as to which the act contemplates a disposal by the city for purposes and under regulations to be prescribed by the legislative authority. At this point in the progress of the town it may well have been contemplated that the lands would have been laid out with some order and regularity in lots and blocks, streets and alleys, particularly that part which was subject to disposal under legislative authority. The same could not be profitably disposed of otherwise, and the public could never after acquire streets so cheaply. If an occupant must content himself with a "lot" in the sense claimed, the reward of town site occupants would be small,—so small, indeed, that none would ever take advantage of the provisions of the act. That this was not the intention of the act is shown by the declaration of the act that the city takes the land "in trust for the several use and benefit of the occupants thereof according to their respective interests." At the same time the act must have contemplated some limitation on the holdings of citizens of the town. This limitation is not expressed in the act, but is found in the spirit and purpose of the act. The interests of occupants which the act recognizes cannot extend beyond their actual and beneficial holdings for town purposes. Subject to this limitation, it seems to us that the act vested the title to the town site in the city in trust, primarily, to make title to occupants of the lands actually held by them.

In a late case decided by the Supreme Court of the United States, in which the act in question was construed, that court says: "The power vested in the legis-

lature of the territory in the execution of the trust upon which the entry was made was confined to regulations for the disposal of the lots and the proceeds of the sales. These regulations *might* extend to provisions for the ascertainment of the nature and extent of the occupancy of different claimants of lots and the execution and delivery to those found to be occupants in good faith, of some recognition of title in the nature of a conveyance. But they could not authorize any diminution of the rights of the occupants, when the extent of their occupancy was established. The entry was in trust for them, and nothing more was necessary than an official recognition of the extent of their occupancy." (*Ashby* v. *Hall et al.*, decided at the October term, 1886, of the Supreme Court of the United States.) Many cases defining and determining the rights of occupants of land under the act of 1867 have been called to our attention, but most of these have dealt with the rights of conflicting claimants to land, both of whom claimed by reason of occupancy, and do not bear upon the precise question in this case. We do not deem it necessary to examine them in detail, or to notice them further than to say that all of them recognize that the primary object of the act was to secure to occupants the lands actually held by them for town purposes, and which they could secure in no other way. (*Leech* v. *Ranch*, 3 Minn. 454; *Castner* v. *Gunther*, 6 Minn. 119; *Lechler* v. *Chapin*, 12 Nev. 65; *Winfield Town Co.* v. *Maris*, 11 Kan. 151; *In re Cash*, 6 Mich. 210; *Guffin* v. *Lonney*, 26 Kan. 717; *Rathbone* v. *Sterling*, 25 Kan. 444; *Burbank* v. *Ellis*, 7 Neb. 163; *Porcher* v. *Ashley*, 5 Mont. 86; *Jones* v. *City of Petaluma*, 38 Cal. 406.)

It is undoubtedly true that the act of Congress contemplated the existence in towns taking the benefit of its provisions of streets, alleys, lots, and blocks, and that the public should take an interest in the same as highways and approaches, of which interest the individuals

could not be lawfully divested without their consent. This much was decided by the Supreme Court of the United States in the case before referred to.    There could not well be a town without some means of communication between the respective inhabitants; and at the time of the entry under the law, the necessities of the people and the desire to enhance the value of their holdings would naturally prompt measures to secure convenient communication with each other, and convenient access and egress to and from their own premises. The act of Congress contemplated all these things, and this in effect is what the Supreme Court of the United States determined in the late decision mentioned.    The act, however, did not contemplate the existence of power in any person or authority in the new town to make a plat of lots, blocks, streets, and alleys which did not exist as a fact, and to which plat the occupants had not given their assent, and to bind them in the future determination of their interests by such plat.    The lots, blocks, streets, and alleys contemplated by the act, and as to which on the entry of the lands the interest of the public attaches, are those lots, blocks, streets, and alleys which exist as a fact at the time of the entry, either by actual use or by consent and acquiescence of the occupant affected.    The case of *Ashby* v. *Hall et al.* reached the Supreme Court of the United States on appeal from the Supreme Court of Montana.    An examination of the decision of the latter court, which was affirmed in the higher court, will make it plain that nothing more was meant in either case than to affirm that the entry of the town site under the act of 1867 carried with it the right of the public to the street then recognized and used by common consent.    The only survey and plat made in that case before the entry was made by the probate judge in 1866, and as to that the court says: "The survey and plat of 1866, as to the streets and alleys, derived all its vitality from general usage

and common consent. Technically the occupation of
the lots and the use of the streets and alleys was a tres-
pass, and the purpose of the act of Congress, providing
for the reservation and sale of town sites on the public
domain, was enacted to enable occupants of lots so situ-
ated to become the owners of the land they occupied.
And so the act provided for the entry, at the proper land-
office, of the land so occupied, in trust for the several
use and benefit of the occupants thereof according to
their respective interests. Disposing of the lands cov-
ered by a town to the occupants, according to their sev-
eral rights and interests, could not be done except the
streets and alleys *then in public use* were reserved to the
public." (*Parcher* v. *Ashley,* 5 Mont. 86.)

It would be a hard construction of the law to hold
that a person occupying a piece of land in a town,
which the other inhabitants wished to absorb as a
street, could be excluded from sharing in the bounty
of the government by a survey and plat made at the
instance of his co-occupants, and to which he had
never assented. Such an individual is as much an
occupant of the town as any other, and is by the ex-
press terms of the act to share in the grant according
to his interest. It is impossible to conceive of the
growth of a town to a position of sufficient impor-
tance to entitle it to the benefit of the town-site act
without recognizing that there must have been a period
in the existence of the town before streets and alleys
were laid out in regular order and with mathemati-
cal accuracy. It would ill accord with the purpose
and spirit of this act to hold that rights acquired
during this period by occupancy could be divested
by any act other than that of the occupant himself.
While, therefore, the act of 1867 contemplated the ex-
istence of streets and alleys in the new towns to which
its provisions should apply, it was such streets and
alleys as were by common consent used as such,—

not paper streets and alleys, to which the occupant
had failed to give assent.   This rule is so reasonable,
that the city authorities of Walla Walla acted on it
in their dealings with others whose lands infringed
on the streets.   And this brings us to the contention
that Dr. Baker recognized this plat before the entry
of the town, both by his application for a deed to
this land, and by his acceptance of the deed made
to him for a portion of it.   But his acts in that re-
spect must be construed by the light of his testi-
mony, and by what he actually did concerning the
land.   Taking his statement to the city authorities
at the time the application was made and the deed
delivered in connection with those acts, and remem-
bering that he held on to this bond tenaciously all
the time, it is impossible to reach the conclusion
that he did recognize that plat other than prospec-
tively,—as a convenient and proper scheme of streets
for the town which might go into operation, in so
far as he was affected, whenever compensation should
be made to him for lands in his occupancy which
would be absorbed by it.   It may be claimed in this
connection that the representations and protestations
of Dr. Baker were not made to the corporate authori-
ties, but to a single officer who had no power to
listen to the same for the city or the public, or to
bind them by any assurances given.   But at the time
said transactions occurred, the town-site act of 1844
had been repealed, and the act of 1867 had not then
become law, so that all the dealings were outside the
law, and what this officer did, equally with what Dr.
Baker said, are to be considered together to deter-
mine what the true intent of Dr. Baker was, and
nothing more.

    2. We do not think an estoppel by deed was created
by the acceptance by Baker of the deed from the city.
The fact last stated is a reason on which this conclu-

sion might be grounded, but another sufficient reason is, that the recital in the deed which is relied on to create the estopped is collateral to the purposes of this action. The admission that the particular land conveyed by that deed was bounded on the east by First Street, by implication admitting that the land immediately east of that conveyed was a part of First Street, is conclusive of the facts so admitted only in an action of which the deed itself is the foundation or defense.

"The purpose for which a statement in the deed was made must always be considered, and its effect limited accordingly, however broad its language. Recitals are generally made for the purpose of indicating or of carrying into effect the general object of the deed, and not for collateral purposes; and hence the rule is, that a recital is conclusive of the facts stated only in an action of which the deed itself is the foundation or defense." (Bigelow on Estoppel, 3d ed., 289.)

A case analagous to this, but stronger in the fact that the admission was express, was that of *Carpenter* v. *Buller*, 8 Mees. & W. 209, the facts of which are stated by Bigelow thus: "In the case of *Carpenter* v. *Buller*, the plaintiff sued for a trespass alleged to have been committed on his close. The defendant pleaded title in himself, and introduced in evidence a deed made between the parties for a purpose collateral to the question of title, in which it was recited that the title to the property was in himself. Counsel for the plaintiff contended that the recital, though admissible in evidence, was not conclusive, and he proposed to show that the admission was made under a misapprehension. On the other hand, it was contended that the plaintiff was estopped by his admission in the recital, and that the evidence therefore was inadmissible. But the court ruled otherwise." The Supreme Court of the United States has approved

and applied this doctrine. (*Bank of America* v. *Banks*, 101 U. S. 240.)

3. Are the facts such that they create an estoppel *in pais?* We think not. Taking the testimony of Dr. Baker as conclusive, because not disputed or assailed in any way, the city authorities were informed by him that he did not intend to relinquish his right to the land not conveyed until paid for the same. Thus the first element of an estoppel is wanting, namely, a representation contrary to that fact or state of facts which the party is endeavoring to establish. It seems to us that two other elements of estoppel are wanting, namely, that the party to whom the representation was made must have been ignorant of the true facts, and that he must have acted thereon in such manner that he will be prejudiced if the true facts be shown. The city was not misled, because it was the trustee of Dr. Baker, and must have known his rights as well as he did. It has done nothing to its prejudice, because the *status* of this property now is exactly what it has been from the beginning. In no act that the city has done concerning this property, or concerning any interest possessed by it, since the making of its deed to Dr. Baker, so far as the record discloses, has it prejudiced itself. If for the purposes of this defense the city of Walla Walla can be considered as representing the interests of the public at large, the individuals of which may have dealt with reference to the representations of Dr. Baker, exactly the same results follow. The particular property in dispute is so situated that the maintenance of the title of appellant cannot well prejudice any other private interest,— at least, there is no evidence to that effect. It was insisted by the appellee that the decision of this court in *Moore* v. *City of Walla Walla*, 2 Wash. 184, would require a different conclusion on this branch of the case. Some of the facts in that case are similar to the facts in this case, but the estoppel is there declared not only on the facts mentioned,

but also on facts "of a similar nature appearing in the record," but not disclosed in the opinion. What these facts were we do not know, but are bound to assume that they were of such a character as to justify the application of the doctrine of estoppel.

The last position of counsel for appellee which needs to be noticed is, that there is nothing in the case to make it of equitable cognizance, inasmuch as the appellant is not entitled under the local legislation, as it stands, to a conveyance of the legal title, and as to the trespasses to his possession complained of, he has a full and complete remedy at law. It is probably true that the courts under the circumstances of the present case are without power to enforce the execution of the trust to the extent of requiring the city to make conveyance of title. But the appellant has not sought that relief. He seeks merely to have his rights declared, and to have the city enjoined from further interfering with them, until such time as the legislature may make provision for the complete execution of the trust. This relief we think he is entitled to, and that the trust relation existing between the parties is sufficient ground to justify and require a court of equity to take cognizance of the case. If this were a trust created by the act of an individual, the conduct of the trustee would be sufficient to justify his removal, and if the trust were one not yet completed, the appointment of a new trustee. Being a trust created by law, to be executed under the direction of law, the court ought not, probably in any possible posture of the case, to go to that extent. But that it can and ought to control the action of the trustee during the pendency of the trust, against acts prejudicial to the rights of the *cestui que trust*, especially where those acts are backed by the high hand of official power, against which appellant is helpless, we entertain no doubt. If we were not clear on this proposition, we would be willing to rest the jurisdiction of the court on

the provisions of section 551 of the Code. Under that section one in possession of property (certainly one in possession claiming under patent from the United States) may bring another who asserts adverse title to the property into a court of equity to have his title ascertained and declared, and we think such party, on an adjudication in his favor, would be entitled to an injunction, not only against any further assertion of title, but against further trespasses, if the assertion of title about which he complains has taken that troublesome form.

A remaining question is the claim of the appellant for damages by reason of the trespasses committed by the city. He was not urgent in argument on this branch of his case. The damage claimed by him is for prospective profits which he might have received from the rent of the building had he been permitted to erect the same. We think this element of damage too remote. (Sedgwick on Damages, 265–268, and notes.) The learned judge who sat in this case below had been of counsel in the case before his appointment as judge, and he tried the case there, under stipulation of the parties, in order that none of the other judges should be disqualified in this court to assist in its determination. The decree rendered by him dismissing the complaint was purely formal, and was intended to be so.

The judgment of the court below is reversed, and it is ordered that the cause be remanded to that court, with directions to enter a decree in accordance with this opinion.

GREENE, C. J., concurred.