## TOOELE CITY v. ELKINGTON et al.

No. 6327.   Decided August 22, 1941.   (116 P. 2d 406.)

*E. LeRoy Shields,* of Salt Lake City, for appellants.

*M. Earl Marshall,* of Tooele, for respondent.

MOFFAT, Chief Justice.

This action was instituted by the City of Tooele, State of Utah, as a suit to quiet title to a strip of land alleged to have been dedicated as an alley. The land is described in the complaint, as amended, as follows: "Commencing at the Northwest corner of Block 52, Plat 'A' Tooele City Survey, South 25.48 rods, West 49.50 feet, to the southeast corner of Block 51, North 25.48 rods, East 49.50 feet to the place of beginning, being in Tooele City, Tooele County, State of Utah."

The title to the property was quieted in Tooele City. The defendants Lenora and Glen Elkington, administrators of the estate of Isaac Elkington, deceased, appealed to this court.

The defendants and appellants based their title to the property upon two grounds: (1) That the city deeded them the property by a quit claim deed and thereby relinquished all right the city might have had in the property; and (2) that the property was never owned nor dedicated as an alley by the city and if it did have any rights in the property they have long since been waived and lost.

The United States of America on the 10th day of July, 1872, conveyed in trust to Hugh S. Gowans, Mayor of Tooele City, Tooele County, Utah Territory, and to his successors in office all of Section twenty-eight, the east half of Section twenty-nine, and the south half of Section twenty-one, in Township three South of Range four West in the District of Lands subject to sale at Salt Lake City, Utah Territory.

A mayor's deed was executed by Andrew Galloway, Acting Mayor of Tooele County, Utah Territory to Benjamin Howell on March 1, 1873, to Lot one, Block fifty-one, Plat A, Tooele City Survey, situated in Section twenty-eight Township three South Range four West, containing 3.10 acres; a similar conveyance between the same parties was made to

"Lot ...... Block 52, Plat 'A,' Tooele City Survey. Situated in Section twenty-eight, Township three South, Range four West, containing 3.67 acres."

Benjamin P. Howells conveyed on August 9, 1886, and October 5, 1888, the following tracts of land, respectively:

"Commencing at the Northeast corner of Block fifty-two, in Plat 'A,' Tooele City Survey, in Tooele County, Utah Territory, extending thence West along Adams' Street 5.25 chains, thence South two chains, thence East 5.25 chains to West Street, thence North two chains to the place of beginning, containing 1$\frac{1}{16}$ acres of land. Situated in Section twenty-eight, Township three South of Range four West, Salt Lake Meridian."

And Benjamin P. Howells conveyed to George E. Howells on October 5, 1888:

"All of Block fifty-one as platted in Plat 'A' of the Tooele City Survey, Township three South, Range four West, Salt Lake Meridian, containing three acres of land, more or less."

On February 10, George E. Howells conveyed to William Elkington:

"All of Block fifty-one as platted in Plat 'A' of the Tooele City Survey, Township three South, Range four West, Salt Lake Meridian, containing three acres of land, more or less."

William H. Elkington, Senior, a widower, conveyed to Elmer J. Elkington on January 7, 1929:

"The following described tracts of land in Tooele City, Tooele County, State of Utah; North eight rods of Block fifty-two, Plat 'A,' Tooele City Survey. Commencing five rods East and ten rods South of the Northwest corner of Block fifty-one, Plat 'A,' Tooele City Survey, and running thence East 15 rods, thence North 10 rods, thence East .60 rods, thence South 25.48 rods, thence West 15.60 rods, thence North 15.48 rods to place of beginning."

Elmer J. Elkington and Florence Elkington, his wife, made two separate conveyances to I. J. Elkington and his wife, I. J. Elkington being Isaac Elkington, the deceased:

"The following described tract of land in Tooele County, State of Utah: Commencing five rods East and ten rods South of Northwest corner of Block 51, Plat 'A,' Tooele City Survey, thence east 1500 [15] rods; thence North 10 rods; East .60 rods, more or less to the alley; South 25.48 rods to Southeast corner of Block; thence West

15.60 rods, more or less to a point five rods East of the Southwest corner of Block 51; thence North 15.48 rods to beginning." And "The following described tract of land in Tooele County, State of Utah; Beginning at the Northwest corner of Block fifty-two of Plat 'A,' Tooele City Survey, thence East four rods, thence South eight rods, thence West four rods, thence North eight rods to the place of beginning."

The official plat of the county, dated December 5, 1882, was adopted as the official plat on May 1, 1894, and was filed with the County Recorder on May 2, 1894.

The alley, or property, in question has never been opened to the public as a public thoroughfare and the evidence is that all predecessors in interest to the defendants have used the property and kept it fenced to the exclusion of the public.

From the conveyances it is clear that each and every conveyance has recognized a city plat, that each and every conveyance has been made in accordance with the plat and that the defendants in this action received from their predecessor in interest by conveyance none of the property here in question. The metes and bounds run but to the platted alley and the conveyance itself uses the alley as a monument. Under the doctrine accepted by this court in the case of *Sowadzki* v. *Salt Lake County*, 36 Utah 127, 104 P. 111, 117, the alley had been dedicated. True the cited case has reference to a dedication in the county, however, the necessary facts constituting a dedication required in the county are the same as those required in a city. See also *Wallace* v. *Cable*, 87 Kan. 835, 127 P. 5, 42 A. L. R., N. S. 587.

On the 18th day of March, 1938, Tooele City, a municipal corporation, by its mayor Nelse Blomstrom, conveyed to I. J. Elkington the property in dispute by a quit claim deed which reads (taken from the abstract) :

"The following described tract of land in Tooele City, Tooele County, State of Utah: Commencing at the Northwest corner of Block fifty-two, of Plat 'A,' Tooele City Survey, thence South 25.48 rods, thence West 49.50 feet, more or less to the Southeast corner

of Block fifty-one, thence North 25.48 rods, to the South line of Third South Street, thence East 49.50 feet, more or less to the place of beginning. This deed is executed under and by virtue of a resolution of the City Council of Tooele City, Utah, duly adopted on the 7th day of March, A. D. 1938."

There is no dispute in the evidence as to the quit claim deed being executed pursuant to a resolution. However, Sec. 15-8-8, R. S. U. 1933, provides:

"They [cities and towns] may lay out, establish, open, alter, widen, narrow, extend, grade, pavé or otherwise improve streets, alleys, avenues, boulevards, sidewalks, parks, airports and public grounds, and *may vacate the same or parts thereof, by ordinance.*" (Italics added.)

The powers of municipal corporations are delegated and a municipal corporation may exercise only the powers granted and in the manner prescribed. The question is whether the statute is directory or mandatory. A brief outline of the evolution of the statute will aid ■ in determining the intention of the legislative enactment. In the Compiled Laws of Utah, 1888, Sec. 1755, it is provided:

"The city council shall have the following powers: * * *
"8. To lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues sidewalks, parks and public grounds and vacate the same."

The same provision will be found in the Revised Statutes of Utah, 1898; except for the insertion of a semi-colon between the words "grounds" and "and", also in Laws of Utah, 1901, c. 124, 1903, c 138, 1905, c. 42, Compiled Laws of Utah 1907, § 206, subd. 8, and Laws of Utah, 1911, c. 120. There was added in 1915, Laws of Utah 1915, Chap. 100, the following to the abovesetforth provision:

"206x8. To lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, parks and public grounds; and to vacate the same; and to establish, maintain and to provide for the supervision of public playgrounds, recreation places and swimming pools."

In Chap. 123, Laws of Utah 1917, Sec. 206x8, was amended to read as follows:

"206x8. To lay out, establish, open, alter, widen, narrow, extend, grade, pave or otherwise *improve* streets, alleys, avenues, boulevards, sidewalks, parks and public grounds, and to vacate streets, alleys, avenues and boulevards or parts thereof, *by ordinance;* and to establish, maintain and provide for the supervision of bath houses, public playgrounds, recreation places and swimming pools." (Italics added.)

The same provision is to be found in the Compiled Laws of Utah 1917, § 570x8. In the Laws of Utah 1919, c. 11, this section was amended to read:

"To lay out, establish, open, alter, widen, narrow, extend, grade, pave or otherwise improve streets, alleys, avenues, boulevards, sidewalks, parks and public grounds and *to vacate streets, alleys,* avenues, parks and boulevards or parts thereof, *by ordinance;* and to establish, maintain and provide for the supervision of bath houses, public playgrounds, recreation places, and swimming pools." (Italics added.)

The Revised Statutes of Utah 1933, provide:

"15-8-1. The boards of commissioners and city councils of cities shall have the power to control the finances and property of the corporation.

*    *    *

"15-8-8. They may lay out, establish, open, alter, widen, narrow, extend, grade, pave or otherwise improve streets, alleys, avenues, boulevards, sidewalks, parks, airports and public grounds, and *may vacate the same or parts thereof, by ordinance.*" (Italics added.)

It will be noted that first the power was given to "lay out * * * and vacate"; then the power was given to "lay out * * * and to vacate * * *, by ordinance", and now there is the present power that the council "may lay out * * * and * * * vacate * * * by ordinance."

Council for the appellants has cited the case of *Houghton* v. *Barton,* 49 Utah 611, 165 P. 471, 476, as authority that the statute is not restrictive and that the city may vacate streets, alleys, avenues, boulevards, sidewalks, parks, air-

ports and public grounds in other ways than by ordinance. The court in the case of Houghton v. Barton refused to decree that the ground, which was formerly a part of Third North street, was located in the middle of the block between lots 2 and 4, and thereby increased the dimensions of lot 3 to the extent of the area of the surplus ground, and that the defendant had extended his property into Third North street at the expense of losing an equal amount of property on the other end of his property. The facts were that the owner of the property facing on Third North street used part of Third North street to his own use and built buildings upon the property. The plaintiff claimed that the defendant only owned from the corner monument up into the block as far as his measurements took him and that therefore the property that was formerly the property of the defendant became his by this encroachment into the street. The cited and quoted portion of the opinion reads:

"Counsel for appellants contend that the 'city could not do any such act.' If not, why not? As we have pointed out the evidence, without conflict, shows that respondent and his predecessor, Hyrum Barton for more than 15 years (the great preponderance of the evidence shows 20 full years) claimed to be the owners, and were in the exclusive possession of the south end of block 19 (except the southeast corner of the block referred to in the pleadings as the property of Margaret Taylor) from Third North street northerly 192.12 feet to a point a few feet north of the foundation of the old Jarvis house on lot 2. Moreover, the evidence shows that respondent in recent years, erected an apartment house on the ground which the evidence, what there is on the point, tends to show was formerly a part of the street as the street was originally platted by the city.

\* \* \*

"Under these circumstances we are not prepared to say that the city exceeded or abused its power to the prejudice of appellants by waiving whatever title or right it may have had to the surplus ground."

The court expressly states that it was not prepared to say that the city exceeded or abused its power to the prejudice of appellants. The case at bar is distinguishable; in fact, the same principal of law is not involved because in

the case at bar the city is claiming its right to the property while in the cited case the action was not against the city, and the city was not claiming an interest in the property.

John S. Lewis brought an action against the Pingree National Bank to require the bank to remove a portion of the bank building which extended into the city sidewalk. It was shown in evidence that all property holders along the street were using a foot of ground which belonged to the city, and that the city had granted the use of property belonging to the city. This court allowed the obstruction to remain, but stated, inter alia:

"This case, therefore, merely is another one of those cases where the law remains unenforced by tacit or common consent *until some one bolder than the rest of the community arises and insists upon a strict and literal enforcement of the law,* regardless of the consequences that may be imposed upon the victim." (Italics added.) *Lewis* v. *Pingree National Bank,* 47 Utah 35, 151 P. 558, 566, L. R. A. 1916C, 1260.

The *Lewis* v. *Pingree,* supra, case was one like unto the case of *Houghton* v. *Barton,* supra, in that they were between private parties. The case at bar is one in which the city, claiming as rightful owner of the property, is asserting its rights and certainly is the proper party to arise and insist upon a strict and literal enforcement of the law.

### Section 1, Chap. 38, Laws of Utah 1899, provides:

"No person shall be allowed to acquire any right or title in or to any lands held by any town or city, or the corporate authorities thereof, designated for public use as streets, lanes, avenues, alleys, parks, public squares, or for other purposes, by adverse possession thereof for any length of time whatsoever."

The property in dispute was never deeded to the defendants except for the purported conveyance from the city in 1938, and the abstract of title clearly shows that the predecessors in interest understood that an alley had been dedicated by the city plat. The defendants

could not have received any rights which were not conveyed to them.

In the case of *Wall* v. *Salt Lake City,* 50 Utah 593, 168 P. 766, 769, case not cited by counsel for either side to this action, most of the issues here presented upon appeal were presented to this court. Citing and commenting on many cases cited by counsel, the court stated in the opinion:

"They are cases in which the party contesting the right of the municipality relied on the doctrine of laches, prescription, adverse possession, statutes of limitation, or equitable estoppel by reason of long acquiescence in the conduct of the parties claiming the property as against the municipality. None of them present a case like this, where the municipality, by its own affirmative acts, declarations, and conduct, misled the party, or induced him to believe that he had the right to rely upon the assurances which the municipality, after a long period of time, sought to repudiate to his injury."

The question, except for the matter of estoppel, was determined thusly:

"As far as the statute of limitations and the doctrine of prescription and adverse possession is concerned, our statute (Comp. Laws Utah 1907, § 2866x) determines that question."

The pertinent facts of the Wall case are these: The city had dedicated a street 132 feet wide from Tenth East Street to Thirteenth East Street to be known as Eighth South Street. The adjacent property petitioned that the street be replatted and that the street be cut to but 66 feet in width. The board of commissioners made a personal inspection of the property. It was concluded that the street would never be used as a regular street as the grade was too steep for carriages, there was a gulch which made passage difficult, and the canal crossing the street made an added hazard. Upon determining these facts the street was replatted and the property was taken into the possession of the adjacent property holders. The property taken was then assessed against the holders for some twenty-one years. The court found there an estoppel in pais as against the city.

In the case at bar, the consideration given the city by Elkington was small, if anything; the deed was made in contravention of the statute; there is no evidence that the property has been assessed against the defendants or their predecessor in interest; the time element is short; and there was not a replatting or a change in the whole neighborhood to the benefit of all adjacent landowners.

Balancing the justices of the cause, we find there is no ground for an estoppel in pais as against the city. In so doing, we are mindful of the fact that individuals dealing with officers should be able to rely upon their acts; that officers should act within the authority granted; and that officers should be held to their acts and covenants like individuals. However, the community is interested in the vacating of streets and the legislature has provided that they be vacated by ordinance, in order that the community may have notice of the acts of the commissions and thereby protect the private property holder and the community against such actions.

Judgment is affirmed. Each party to bear its own costs.

LARSON, McDONOUGH, and PRATT, JJ., concur.

WOLFE, Justice (concurring in the results).

I concur in the results. I think the statement that "a municipal corporation may exercise only the powers granted and in the manner prescribed" may be susceptible of too narrow an interpretation. I think the proposition as to powers exercisable by the city is as adopted from 1 Dillon, Municipal Corporations, 5th Ed., P. 448, Sec. 237, in the cases of *Salt Lake City* v. *Sutter,* 61 Utah 533, 216 P. 234; *American Fork City* v. *Robinson,* 77 Utah 168, 292 P. 249; *Utah Rapid Transit Co.* v. *Ogden City et al.,* 89 Utah 546, 58 P. 2d 1.

I do not know whether the statement that "individuals dealing with officers should be able to rely upon their acts; that officers should act within the authority granted; and

that officers should be held to their acts   *   *   *   like individuals" is intended to be a statement of moral responsibility or enunciate a legal principle, or whether it means that a municipality whose officers act or promise should be held for the acts of those officers, like individuals. If these expressions are meant to enunciate legal principles, I call attention to the following: *Missouri* v. *Bank of Missouri*, 45 Mo. 528; *Pierce* v. *United States*, 7 Wall. 666, 19 L. Ed. 169; McQuillan on Municipal Corporations, (2d Ed.) Sec. 519, Page 192; Mecham on Public Offices, Secs. 511 and 512, P. 336; *Wormstead* v. *City of Lynn*, 184 Mass. 425, 68 N. E. 841; *Higginson* v. *City of Fall River*, 226 Mass. 423, 115 N. E. 764, 2 A. L. R. 1209; *City of Enterprise* v. *J. Rawls*, 204 Ala. 528, 86 So. 374, 11 A. L. R. 1175. These authorities discuss the duty of an individual in dealing with an officer or agent of a city, to determine whether he is acting strictly within his authority. The principle of "holding out" does not apply to a municipality. A city may be estopped from asserting a claim because of the action or non-action of its representative body or successive bodies under certain circumstances, but neither that body nor the city is estopped or bound in any way on the theory that it has held out its agent as having authority which he did not have.