HALL et al. v. NORTH OGDEN CITY et al.
(WYATT et al., Interveners).

No. 6834.   Decided February 14, 1946.   (166 P. 2d 221.)

See 26 C. J. S., Deeds, sec. 30; 16 Am. Jur., 592.

*Thatcher & Young* and *Parley E. Norseth,* all of Ogden, for appellants.

*Samuel C. Powell* and *Derrah B. Van Dyke,* both of Ogden, for respondents.

TURNER, Justice.

Plaintiffs and appellants instituted this suit to enjoin the town of North Ogden and its officials from opening up as streets certain tracts of land indicated as streets by the plat of the survey of the townsite of North Ogden filed April 27, 1870. On August 2, 1872, by patent, the United States conveyed to Franklin D. Richards, County Judge of Weber County, Utah,

"in trust for the several use and benefit of the occupants of the Town of North Ogden, Weber County, Utah Territory, according to their respective interests",

certain lands in Township 7 North, Range 1 West, in Weber County, which lands were embraced within the area of lands platted as the townsite of North Ogden into lots, blocks and streets. The patent recited that it was executed in accordance with the provisions of the act of Congress of April 24, 1820, and the act of Congress approved March 2, 1867, entitled "An Act for the Relief of the Inhabitants of Cities and Towns upon the Public Lands," commonly known as the Federal Townsite Act. Since the plaintiffs and appellants claim title by adverse use to those portions of the plat designated as streets which have not been used

for many years as public rights-of-way, if ever actually used for such purposes, it is necessary to make reference to the Federal and Territorial townsite acts.

The Federal Townsite Act, 14 Stat. 541, provides, inter alia:

"That whenever any portion of the public lands of the United States have been or shall be settled upon and occupied as a townsite, and therefore not subject to entry under the agricultural pre-emption laws, it shall be lawful, in case such town shall be incorporated, for the corporate authorities thereof, and if not incorporated, for the judge of the county court for the county in which such town may be situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated: * * *."

The act also provides for the amount of land which may thus be acquired, according to the number of inhabitants of such town. The amendment to the act, approved June 8, 1868, 15 Stat. 67, specifies that in addition to payment of the minimum price for such lands,

"there shall be paid by the parties availing themselves of the provisions of said acts all costs of surveying * * * by the United States, before any patent shall issue therefor."

The fact that patent issued in 1872 to the county judge in trust, is evidence that the costs of surveying were paid.

The Territorial Legislature by act approved February 17, 1869, adopted rules and regulations, known as the Territorial Townsite Act, C. L. Utah 1876, § 1166 et seq. The rules and regulations so enacted provide, inter alia, that

"it shall be the duty of such corporate authorities or judge (as the case may be), and they are hereby directed and required to dispose of and convey the title to such land, or to the several blocks, lots, parcels or shares thereof, to the persons entitled thereto, to be ascertained as hereinafter prescribed."

The act provides for publication of notice, and for the presentation of claims within six months specifying in writing the parcel or parts of land in which the claimant asserts an interest, and the specific right, interest or estate therein; and that

"all persons failing to make and deliver such statement within the time limited in this section shall be forever barred the right of claiming or recovering such land, or any interest or estate therein, or in any part, parcel or share thereof, in any court of law or equity"

except in case good cause is shown for delay, the time may be extended not to exceed one year. Section 1168. Section 1170 provides for examination and adjudication of each claim, and section 1169 provides for appeal to the district court in the event of adverse claims if a party should feel aggrieved at the decision of the court.

Section 1173 clearly indicates that the Legislature never intended any title to be acquired to the streets laid out on the plat of a townsite, for in addition to requiring payment of the amount chargeable to such claimant,

"before the corporate authorities or judge holding any such lands in trust as aforesaid, shall be required to execute, acknowledge or deliver any deed of conveyance thereof",

the Legislature specified the method of computation of the amount to be paid,

"by taking the whole amount of the cost of the land of which it is a part, and expenses stated in the account as prescribed in section 7 (1172) in the proportion which the area of such lot shall bear to the whole amount of land entered after deducting the area of all streets, alleys and public grounds in such city or town and the reasonable charges for preparing, executing and acknowledging such deed."

Section 1174 provides:

"That whenever the title to such lands shall be held by the corporate authorities of any town or city, all lands designated for public use by such corporate authorities as streets, lanes, avenues, alleys, parks, commons and public grounds, shall vest in and be held by the corporation absolutely, and shall not be claimed adversely by any person or

persons whatsoever; and the judge of probate who shall have entered any lands in trust for any town or city which may afterwards become incorporated, shall, under the same conditions, convey by deed to the corporation thereof the lands designated for the use of the public as aforesaid;"

and that in case of death of the judge before complete execution of the trust, title to such lands shall vest in his successor in office who shall execute the trust in the same manner and under the same conditions imposed by the statute upon the judge or mayor receiving the trust in the first instance.

Section 1175 provides that if there is any unclaimed land after the expiration of the time for filing claims, the corporate authorities or the probate judge (if the town is unincorporated)

"shall cause the same to be surveyed and laid out into suitable blocks and lots, and shall reserve such portions as may be deemed necessary for public squares, school houses or hospital lots, and shall cause all necessary streets, roads, lanes and alleys to be laid out through the same, a plot of which properly certified, shall be recorded in the recorder's office of the county in which the same may be situated;"

and the mayor or the probate judge (as the case might be)

"may sell the lots or blocks so laid out, and not reserved for public use in suitable parcels, to possessor of adjoining lands or to other citizens of such city or town", etc.

By the act approved Feberuary 18, 1876, the time for presentation of claims was extended, to relieve from default those who had not made timely application for the lands occupied by them. C. L. 1876, p. 385, § 1178.

At the trial, an abstract of title of two of the plaintiffs was introduced in evidence, and it was stipulated that such abstract is typical of the abstracts of title of the other plaintiffs. This abstract of title shows the plat and survey of North Ogden as filed in 1870, the United States patent to Franklin D. Richards, County Judge,

"in trust for the several use and benefit of the occupants of the Town of North Ogden, Weber County, Utah Territory, according to their respective interests", etc.;

and land claims filed under the Territorial Townsite Act. These land claims describe the lands entirely with reference to the plat of North Ogden survey, and the claims made are to specified lots in designated blocks. The adjudication of ownership is also according to the plat of North Ogden, and so are the judge's deeds, describing specified lots in specified blocks in plat "A" and in plat "B", of North Ogden Survey. All of the entries in the abstract of title show that the grantors in each case conveyed title by lot numbers, and a typical description in a deed is: The west half of lot 1, all of lots 2, 3, 4, 5, 6, and 7, and the west half of lot 8, block 38, plat "A", North Ogden Survey. The only variation occurs in the deed to two of the plaintiffs dated October 30, 1941, in which appears the following after the description of the lands conveyed with reference to lots in block 38:

"Reserving to grantors a right of way over a roadway 1 rod wide adjoining said land on the South and being part of the land originally laid out as a street on the recorded plat."

As far as record title is concerned, the plaintiffs acquired fee simple title to specified lots in designated blocks as platted in the North Ogden Survey or the townsite survey. Where there is a recorded plat, the conveyance of land by designation of lot number and block number and name of the plat or subdivision passes the title of the grantors the same as if such lots had been described by metes and bounds.

None of the original settlers in North Ogden acquired the fee in the streets, in view of the express language of the Territorial Townsite Act, for the act specifically provides that the streets, lanes, avenues, alleys, parks, commons and public grounds shall vest in and be held by the corporation absolutely

"and shall not be claimed adversely by any person or persons whatsoever; and the judge of probate who shall have entered any lands in trust for any town or city which may afterwards become incorporated, shall, under the same conditions, convey by deed to the corporation thereof the lands designated for the use of the public as aforesaid;"

and in the event of death of the judge before complete execution of the trust, title vests in his successor in office who is charged with the duty of executing the trust—that is, to convey to the corporate entity when the town is incorporated, such streets and other parcels reserved for public use. The fact that North Ogden was not incorporated until 1934 could not alter the effect of the statute, for provision was specifically made for future incorporation. Upon incorporation, the town became entitled to a seed of conveyance from the succesor in office to the probate judge who received title in the first instance, to execute the trust and to vest in the municipal corporation the fee simple title to all streets, lanes, avenues, parks, commons and public grounds designated on the plat which were not vacated by proper authority. The district judge sitting in probate is the successor in office to the territorial probate judge.

The adjudication of all claims under the Territorial Townsite Act was with reference to lots and blocks in the plat of North Ogden, and such adjudications and the deeds executed pursuant thereto did not operate to vest in the owners of the lots, any fee in the streets. For any person to have acquired title to the streets, such acquisition of title would have necessarily been based on something apart from and subsequent to the adjudications of ownership under the Territorial Townsite Act. As stated in *Holland* v. *Buchanan,* 19 Utah 11, 56 P. 561, 562:

"* * * The officer who enters the land is the trustee, and the occupants are the cestuis que trustent, who are entitled to have the trust executed, and the land disposed of, under such rules and regulations as the state or territory where the land is situated may prescribe. The legislature of Utah has enacted the necessary rules and regulations for the disposal of the land which may be so entered, and has provided that the lots shall be conveyed to the rightful owner of pos-

session, occupant or occupants, or to such person as might be entitled to the possession or occupancy."

No townsite could exist without streets, and all the settlers in a town are interested in having streets properly located. The statute not only prohibited adverse possession of the streets and precluded acquisition of title by adverse possession, but made it the duty of the officer entering the land to convey to the municipal corporation of such town upon incorporation, the title to such streets and lands reserved for public use. In the interim the title is held by such officer in trust for a public purpose or use. Since all citizens have a duty to protect public property from destruction and loss, title to such lands held in trust for public use can be acquired only in accordance with the statutes applicable thereto; and except where specially authorized by statute, a person may not acquire title by adverse user since whatever use is made must be presumed to be that use which citizens may properly make or such permissive use as will not defeat the objects of the trust which all citizens have a duty to safeguard.

The argument that streets could not properly be located on the plat of a townsite unless the street was already in use, must be rejected as unsound; for the Territorial Townsite Act contemplated that each town settled on the public domain would be planned with reference to future growth, and that not all of the lands would be occupied, but that some lots would be sold in the future. The Territorial Session Laws 1890, pp. 76-77, appearing substantialy the same in U. C. A. 1943, §§ 78-5-1 to 4, codified an already existing practice of laying out subdivisions. By said act it was provided that

"It shall be lawful for any owner or owners of any land, or any trustee or trustees selected by such owners, to lay out and plat such land into lots, streets, alleys, and public places";

and to make and record an accurate map of the same, setting forth:

"All the parcels of grounds so laid out and platted by their boundaries, course and extent, and whether they are intended for avenues, streets, lanes, alleys, commons or other public uses, together with such as may be reserved for public purposes."

The act also specified (now section 78-5-4, U. C. A. 1943) :

"Such maps and plats when made, acknowledged, filed and recorded with the county recorder shall be a dedication of all such avenues, streets, lanes, alleys, commons or other public places or blocks, and sufficient to vest the fee of such parcels of land as are therein expressed, named or intended, for public uses for the inhabitants of such town and for the public for the uses therein named, or intended."

In lieu of "town" in the present statute appear the words "county, city or town." The Laws of 1894, p. 14, provided for vacating a plat or any portion thereof, or any street or alley in such plat, by petition of the owners of the land contained in the plat, and by owners of land contiguous or adjacent to any street or alley sought to be vacated, presented to the city council or to the county commissioners. No order could be made without hearing and no order vacating the plat or any portion thereof or any street or alley could be made without a finding that neither the public nor any person will be materially injured thereby. See U. C. A. 1943, §§ 78-5-6 to 8.

Appellants apparently recognize the rule that a complaining party must win on the strength of his own title, not on the defects of his adversary's title; for appellants attempted to show that North Ogden lost whatever title it had to streets which were either never opened or ceased to be used as streets, and they also claim title to the center of the streets adjoining the lots to which they established record title.

The only way in which North Ogden could have lost title or be barred by estoppel and laches from asserting title, if at all, would be some acts which would either vest title in others or which would give others the right to preclude North Ogden from asserting its title. In view of the unequivocal language of the Townsite Act,

title could not be acquired by individuals through adverse user. As stated in the case of *Tooele City* v. *Elkington*, 100 Utah 485, 116 P. 2d 406, although a street or alley designated as such on the townsite plat has not been opened up, the officials of the municipality themselves could not convey the title without compliance with the statutes. It is necessary to find statutory authority for divesting the municipality or the public official holding title to the streets in trust for the town, of such title to the streets, in order for the appellants to prevail in this case. It is not claimed that any ordinance was adopted for vacating the streets in question, nor that the inhabitants of North Ogden ever filed any petition to vacate or alter any portion of the plat of North Ogden. The rule of estoppel could not apply against the town as to lands charged with a public trust, for the reasons hereinbefore indicated. Any abandonment or vacation of the land for street purposes, to discharge it of the public trust, would have to be in the manner provided by statute.

In 1886 the Territorial Legislature enacted legislation defining highways. As set forth in C. L. U. ■ 1888, § 2065,

"all roads, streets, alleys and bridges laid out or erected by the public, are highways."

Section 2067 provided that:

"All roads, streets, alleys and bridges which are now used by the public, and have been declared to be highways by the county courts and municipal corporations within their respective jurisdictions, * * * shall be deemed and taken to be public highways."

Section 2071 provided:

"By taking or accepting land for a highway, the public acquire only the right of way, and incidents necessary to enjoying and maintaining it. A transfer of land bounded by a highway, passes the title of the person whose estate is transferred, to the center of the highway." U. C. A. 1943, § 36-1-7.

Could such statute operate to divest the probate judge of the fee simple title to the streets of North Ogden, as held by him in trust under the Townsite Act, and vest such fee in the land owners whose lots abutted on the streets? We think not.

The general legislation respecting highways could not alter the express terms of the Townsite Act. Such legislation related particularly to lands outside of cities and towns. The phrase, "By taking or accepting land for a highway, the public acquire only the right of way," has reference to acquisition of highways over privately owned land. Where the State cuts a highway across a tract of land in private ownership, the State does not take the fee but only an easement. Many of the early roads established in this State were the result of adjoining landowners each giving half the amount of land necessary for the road. Such landowners already had the fee, and the Territorial Legislature and subsequently the State Legislature declared by such statute that such landowners would not be divested of the fee in such roadways. In the case of lots acquired under the Townsite Act, the persons awarded such lots never owned the fee simple title to the streets, and were prohibited by the statute from acquiring title by adverse use. The title to the streets was held by the probate judge to be conveyed to the town when it should be incorporated. The phrase, "A transfer of land bounded by a highway, passes the title of the person whose estate is transferred, to the center of the highway"; could not be applicable to the streets of North Ogden, for the reason the owners of the lots never did own the fee in the streets. The statute on highways did not give them title to the center of the streets. Therefore, the deeds of conveyance shown in the abstracts whereby title to lands was deraigned by lot numbers conveyed title to the grantees to only the area of those lots described, with such rights of access to the streets as are necessarily appurtenant to such lots. The title to the streets came to the probate judge under the United States patent, and he was required to hold such title to those

streets in trust to convey to the town when it should be incorporated. It would be straining clear language to say that the highway statute was intended to alter the terms of such statutory trust.

By section 2070, C. L. U. 1888, it is provided in said same chapter, that:

"A road not worked or used for a period of five years ceases to be a highway."

Said section appeared in the same statute, and referred only to those highways established over privately owned lands or over the public domain. If the highway was merely an easement, the fee would not be changed, and by abandonment of a highway as an easement, the burden in the form of a right of way ceased to exist. As to the streets in North Ogden as in other townsites, the owners of the lots who received deeds to such lots as they were adjudged entitled to own did not own the land within the boundaries of the streets in the first instance, and did not acquire the fee. They merely had an easement of access to the streets.

The case of *Sowadzki* v. *Salt Lake County*, 36 Utah 127, 104 P. 111, does not aid the claim of appellants, for the land involved in that case was not land patented under the Townsite Act. The plat therein mentioned was of land south of Salt Lake City. The land was in private ownership before the platting, and before the dedication of the streets. *Tooele City* v. *Elkington*, supra, on the other hand, applied to lands acquired under the Townsite Act, and is a more recent case and we see no occasion for overruling it.

Appellants have cited cases in which claimants under the Townsite Act of other states and territories were not bound by the surveys for the reason that they had occupied and were entitled to more land than was awarded to them. We are not concerned in this case what the claimants to lots in North Ogden might have done if they had asserted a right to the areas embraced within the limits of the streets on the plat made of the town. No complaint was made either within the time limited or at all, that any

of the predecessors of plaintiffs were denied conveyance of all of the lands to which they became entitled. There is no evidence that they filed any claim to any lands within the area of the streets shown on the plat, and the time for presentation of applications for conveyance having expired over 70 years ago, the successors in interest of those persons who received their deeds from the probate judge, could not re-adjudicate the claims of the original claimants at this late date nor claim that the plat of lots, blocks and streets failed to recognize the claims of the original settlers. The original settlers were bound by the adjudications made on their applications and claims, and the recorded claims indicate that ownership and occupancy was declared with respect only to specified lots in designated blocks, no claim being made to any portion of the streets.

It is claimed that the public acquiesced in the extension of fence lines to the center of the streets in some cases and the erection of valuable improvements within the area of the streets now sought to be opened. Whatever use was made could only be deemed a permissive use and could not be claimed in perpetuity. While the persons who erected the improvements may be the owners of such improvements, they are not the owners of the lands on which they are erected, and the municipality has the right to terminate such permissive use and require the removal of such improvements or to compensate such owners of improvements if such improvements are taken for public use. The plaintiffs, however, cannot restrain the public authorities from opening up such streets, nor prevent the improvement of such streets, since plaintiffs do not have title to such streets.

The judgment is therefore affirmed. Costs to respondents.

McDONOUGH and WOLFE, JJ., concur.

LARSON, C. J., dissents.

WADE, Justice (dissenting).

I dissent. Material facts which are the basis of my opinion were not disclosed in the prevailing opinion, and so a statement of facts is necessary: On October 16, 1869, the predecessors in interest of plaintiffs' lands filed their claims thereto with the County judge under the Townsite Laws, and later made proof thereof and were adjudicated to be the owners and possessors of such lands, and received deeds through which plaintiffs derived their respective interests in such lands. The North Ogden Townsite had been previously entered in the Land Office by the County Judge of Weber County, it being an unincorporated town, under the Federal Townsite Act of 1867, and patent was issued to such judge on August 2, 1872, for the several use and benefit of the occupants thereof. A plat and survey of the North Ogden Townsite was made and filed in the Weber County Recorder's Office on April 27, 1870, in which the lands involved in this action were platted into square blocks, which were divided into lots. Between the blocks and on all sides of each of them was platted a street four rods in width. In all of the claims, adjudications, deeds and transfers in plaintiffs' chains of title the lands therein are described either as a stated lot or block, or a number of stated lots or blocks, or a described portion of a stated lot or block, in Plat "A", North Ogden Survey. Thus, none of the plaintiffs have ever received any deed or conveyance which expressly conveys any part of the lands which were platted as streets. Some of the streets as shown in the plat were opened and being used as such by the public at the time the Townsite was entered by the County Judge, but many of them were not.

Plaintiffs contend that at the time the County Judge entered this townsite their predecessors in interest not only occupied the lands which were platted as lots and blocks and which they claimed and were adjudicated to be the rightful owners and possessors of at that time, but that they also occupied the lands which were adjacent thereto which were platted as streets, which the city now proposes

to open as such and which plaintiffs now occupy. At the trial it was stipulated that, except as to a portion of one street, none of the lands platted as streets, which the city now proposes to open as such, and which is now in the possesion of the plaintiffs, has ever been used by the public as a roadway or for traveling purposes, and no evidence was introduced which showed that the portion of the street excepted from the stipulation was ever so used. Plaintiffs produced witnesses, among whom were some of the oldest residents of North Ogden who are still living, one of whom was eighty years old, who testified that they had been born, raised and lived in that neighborhood all of their lives; had known this property since they were old enough to know any property; that none of the lands which the city now proposes to open for use as streets had ever been used by the public as such but that the lands which plaintiffs now occupy had been fenced in, used and occupied by plaintiffs and their predecessors during all of the time they have known the property.

Thus, at the time of the entry of this townsite none of the lands now occupied by the plaintiffs was being used by the public for roadways or traveling purposes. Plaintiffs' predecessors occupied the lands adjacent to the lands now occupied by.plaintiffs and which were platted as streets, and plaintiffs and their predecessors in interest have occupied such lands to the extent that plaintiffs now occupy them as long as a man eighty years old can remember. The foregoing facts require the conclusion that plaintiffs' predecessors in interest were occupying the portions of the lands which were platted as streets and which they now occupy, at the time the Townsite was entered by the County Judge for the benefit of the occupants thereof. Any opposing conclusion would be unreasonable.

The defendant, North Ogden City, now proposed to open up for public use as streets all of the lands which were originally platted as such, and to take from plaintiffs such lands which they have occupied for more than seventy-five years, without condemning the same and without compensa-

tion. Plaintiffs bring this action to enjoin the city from interfering with their use of such lands. The city, to succeed, must establish its right to so take such lands under the Federal Townsite Act of 1867, or show that plaintiffs or the predecessors have dedicated such lands for that purpose to the public.

The Townsite Act approved March, 1867, 14 Stat. 541, known as section 2387, Rev. St., 43 U. S. C. A. § 718, as it applies to this case, provides as follows:

"Whenever any portion of the public lands of the United States have been or shall be settled upon and occupied as a town site, * * * it shall be lawful, * * * for the judge of the county court for the county in which such town [is] situated, to enter at the proper land office, * * * the land so settled and occupied, in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust * * * to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated: * * *"

The territorial legislature in 1869 adopted the Territorial Townsite Act, C. L. Utah 1876, § 1166 et seq., which provided for the publication of notice and the filing of a statement of claim within six months thereafter and provided further that:

"All persons failing to make and deliver such statement within the time limited in this section shall be forever barred the right of claiming or recovering such land, or any interest or estate therein, or in any part, parcel or share thereof, in any court of law or equity."

Section 1175, C. L. U. 1876, provides that if there is unclaimed lands after the expiration of the time for filing claims, the probate judge (in case of an unincorporated town)

"shall cause the same to be surveyed and laid out into suitable blocks and lots, * * * and shall cause all necessary streets, roads, lanes and alleys to be laid out through the same, * * *."

There are many cases which have interpretated this Federal statute, including some from the Supreme Court of

the United States, in cases very similar to this one, and they have held without exception that at the time of the entry of the land of the townsite the occupants thereof have a vested right to the use of the streets and alleys then existing and being used, and that each of such occupants at that time becomes to the extent of the lands which he then occupied the beneficiary of the trust created by the act and was then vested with the equitable ownership of the land which he then occupied, and that while the execution of the trust was subject to the rules and regulations of the territorial Legislature, neither by such rules nor by any act of the trustee could the beneficiary be divested of his rights which accrued to him under the act of Congress at the time the entry of the townsite was made. Such cases further hold that the filing and recording of a map or plat of the townsite either in accordance with the territorial regulations or otherwise, which showed no street to exist where one existed and was then being used by the occupants at the time of the entry, or which showed a street or alley to exist over lands or a part thereof which was then occupied by a settler, could not divest the settlers of the right to use the street or alley which existed and were being used at the time of the entry, nor divest the occupant of his vested equitable ownership of all of the lands then occupied by him, and any attempt to do so would be null and void. *Bingham* v. *Walla Walla,* 3 Wash. T. 68, 13 P. 408; *Parchen* v. *Ashby,* 5 Mont. 68, 1 P. 204; same case *Ashby* v. *Hall,* 119 U. S. 526, 7 S. Ct. 308, 30 L. Ed. 469; *City of Helena* v. *Albertose,* 8 Mont. 499, 20 P. 817; *Scully* v. *Squier,* 13 Idaho 417, 90 P. 573, 30 L. R. A., N. S., 183; Id., 215 U. S. 144, 30 S. Ct. 51, 54 L. Ed. 131; *City of Globe* v. *Slack,* 11 Ariz. 408, 95 P. 126; *City of Pueblo* v. *Budd,* 19 Colo. 579, 36 P. 599.

In the cases of *City of Helena* v. *Albertose,* supra; *City of Globe* v. *Slack,* supra; *City of Pueblo* v. *Budd,* supra; and *Treadway* v. *Wilder,* 8 Nev. 91, the local statutes required the occupants to file their claims to such lots within a specified time and provided that a failure to do so would forever bar such claims, and also provided the manner of

disposal of lands not claimed. The statutes in Colorado and Nevada are exactly the same in meaning as our statute above quoted, but the courts held that neither the filing of the plat nor, in the Nevada case, the giving of a deed to a person not occupying the same, could deprive the occupant of his right of possession in the property and that such right could be shown to defeat the claim of another or the public, although the court could not quiet title to the property in the occupant or his successors. In the case of *City of Globe* v. *Slack*, supra, the occupant at the time of the entry filed claim to only the part platted as a lot, but did not make any claim to the adjacent land which he occupied which was platted as a street. Later the original occupant sold his land to the defendant but by his deed only conveyed the lot and not the part platted as a street; however, his successor occupied the part platted as a street the same as the original occupant. The court held that the defendant had sufficient title to defeat the claim of the city.

Nor did the city or town of North Ogden obtain the right to take for public streets the land in question without compensation under the provisions of section 1175, C. L. U. 1876. This section provides in substance that the probate judge shall cause the unclaimed lands to be surveyed and laid out into suitable lots and blocks and shall cause all necessary streets to be laid out. Obviously the intent of that statute was only to authorize the laying out of streets adjacent to the unclaimed lots and blocks which were necessary for the use thereof, and not to authorize the laying out of streets necessary for the use of the lots and blocks which had already been claimed. In any event, if the intent of that section was to take from an occupant land which he occupied at the time the townsite was entered in the land office, and which was still occupied by him or his successors in interest, it would be null and void as an attempt to deprive him of his vested interests under the act of Congress of the equitable title to the lands which he occupied at the

time of the entry. See cases above cited and especially *City of Pueblo* v. *Budd*, supra.

I therefore conclude that the plaintiffs in this action obtained the equitable ownership of all the land which they occupied at the time of the entry in the Land Office of the townsite of North Ogden by the County Judge, and that under the act of Congress neither the City of North Ogden nor the public ever obtained any right, title or interest therein through the plat or survey which was filed, and therefore unless the plaintiffs have dedicated that land to the public the plaintiffs must succeed in this action.

Neither the plaintiffs nor their predecessors in interest have dedicated these lands which are platted as streets to the public as such. Such a dedication can only be done by some act of the owner with the intention that it will have that effect or by estoppel. The filing of this plat in the recorder's office by the public officials, not being an act of the owner, does not have that efect. If it were otherwise, then the public officials could take anyone's property merely by filing a plat showing such property to be platted as property for a public use. All of the cases above cited hold that such a plat does not constitute a dedication of the property by the owner to a public use. The fact that the predecessors of plaintiffs merely made claim to the lands which were shown on the plat as lots and blocks does not constitute such a dedication of the lands platted as streets, *City of Globe* v. *Slack*, supra; nor does the acceptance of a deed from the County Judge of only the lands so platted have that effect, *Bingham* v. *Walla Walla*, supra; nor does the conveyance of the land to his successor without describing the land covered by the street as platted constitute a dedication, *City of Globe* v. *Slack*, supra. The failure of the occupant to file any claim to the land covered by the street as platted does not constitute a dedication thereof to that use. *City of Helena* v. *Albertose*, supra, and *City of Pueblo* v. *Budd*, supra. This, I think, is the proper rule. All of these cases hold that the occupant asserts ownership in the land platted as streets by occupying such lands at the time

of the entry in the land office, and the continuance of such occupancy by him and his successors in interest show that there is no dedication to a public use.

The defendants and interveners rely on the case of *Tooele City* v. *Elkington*, 100 Utah 485, 116 P. 2d 406. In that case no mention is made of who was in possession of the lands in question at the time of the entry in the land office of the townsite, and no discussion of who was entitled to the land at that time is made. But it is assumed that the fact that the predecessors in interest of the defendants conveyed only with reference to the lots and blocks as platted and did not expressly convey the parts in question which was platted as an alley; that such conveyance constituted a dedication of the alley as platted to the public. No discussion of what is necessary to constitute a dedication is made except that the case of *Wallace* v. *Cable,* 87 Kan. 835, 127 P. 5, 6, 42 L. R. A., N. S., 578, is referred to. But that case is certainly no authority for the assumed proposition, as the dedication therein relied upon was a part of the deed which expressly provided:

"* * * meaning hereby to convey to the party of the second part block 73 in the city of Wyandotte, according to the plan of said city published by John H. Miller, made March 18, 1857, with half of the adjoining street, and it is hereby stipulated that these streets shall not be closed up except by mutual consent."

The great weight of authority is contrary to the rule assumed in the Tooele case. See note to *Wallace* v. *Cable,* supra, 87 Kan. 835, 127 P. 5, 42 L. R. A., N. S., 587.

There is no contention that there was any dedication by estoppel and no facts on which such estoppel could be based. I therefore think the decision of the trial court should be reversed.