JOSEPH S. ALEMANY, Respondent, v. THE CITY OF PETALUMA, Appellant.

CONSTRUCTION OF PLEADINGS.—The whole pleading must be construed together; and it is not proper to eliminate a single paragraph from an answer, and give effect to it as a denial, when it appears from the context, and other portions of it, that the denial was intended to be hypothetical.

CITIES AND TOWNS ON PUBLIC LANDS—POLICY OF CONGRESSIONAL LEGISLATION RELATING THERETO.—In legislating in respect to towns which had already grown up on the public domain, and others thereafter to be established, Congress had in view two objects, to wit: First—To protect the equitable rights of those in the *bona fide* occupation of lots in towns already established, and to enable persons to acquire small parcels at a nominal price in towns thereafter to be located; Second—To enable the inhabitants of the existing or proposed town to establish proper streets, blocks and squares adapted to the particular locality.

IDEM—CONSTRUCTION OF THE ACT OF CONGRESS OF JULY 1ST, 1864.—In attempting to avail themselves of the Act of July 1st, 1864, the Trustees of the Town of Petaluma had no power to change the plan of the town in such manner as to convert into a street, alley or public square, land which, under the previous existing plan, was a municipal division, intended for private use, and actually occupied for that purpose.

APPEAL from the District Court of the Fifteenth District, City and County of San Francisco.

The case is stated in the opinion.

*F. D. Colton,* for Appellant:

Claimed that the land on the first day of March, A. D. 1867, was not owned by the United States, but had previously been dedicated to the public as a street, and that therefore the title did not pass to the trustees. By the Act of July 1st, 1864, Congress provided for the survey of towns on public lands for the laying out of streets and squares. Also provided for making and recording plats in the Recorder's office of the county, and filing them in the Government offices. Although the inhabitants do this, they do it as Government officers and for the Government, and the surveys and plats, when filed and recorded, become Government surveys and plats. In this case all the steps were taken, and the Government has sold many of the lots under the survey and plats. The law of 1864 is a public proclamation that the map recorded is a correct map of the streets, etc., of the city. The acts of the Government amount to a dedication of this land to a public use. If this street is not so dedicated, then it follows that no street of the city is so dedicated, and the Government could have sold all the streets after selling the lots. · In the cases I have been able to find I have found none that would not have held acts like these a dedication. (*Trustees for Vin-*

*cennes University* v. *State of Indiana,* 14 Howard U. S. 274; *City of Cincinnati* v. *The Lessees of White,* 6 Peters, 423; *Barclay et al.* v. *Howell's Lessee,* 6 Peters, 498; *New Orleans* v. *The United States,* 10 Peters, 712; *Breed* v. *Cunningham,* 2 Cal. 368; *Harding* v. *Jasper,* 14 Cal. 647; *Kittle* v. *Pfeiffer,* 22 Cal. 489; *Wilcox* v. *Jackson,* 13 Peters, U. S. 513; *Jones & Cutter* v. *Petaluma et al.* 36 Cal. 230.)

*Wm. Henry Jones,* for Respondent :

It is admitted by the answer that plaintiff and his grantors were in the continuous, exclusive, uninterrupted and peaceful occupancy of all the land described in the complaint more than five years next preceding the first day of March, 1867. In *Doll* v. *Meador* (16 Cal. 322), it was held by this Court that the Act of Congress of May 23d, 1844, "extends the pre-emptive right or privilege to town lands." Plaintiff's grantors had then an estate in the land acquired under the Act of 1844; and being an actual settler upon the land had a legal right which had attached to the land prior to the first day of July, 1864. In the case of *United States* v. *Fitzgerald* (14 Curtis, 128), it was held by the Supreme Court of the United States that no reservation or appropriation of a tract of land can be made after a citizen has acquired a right to it under a pre-emption law.

The defendants claim under the Act of Congress of July 1st, 1864, but took no steps towards making the map until December, 1865. Plaintiff's grantor was in the *bona fide* occupancy of the land all this time, and acquired an estate in the land under the Act of 1864, and *before* any of the alleged proceedings were taken by defendants. Did Congress intend and authorize by the Act of July 1st, 1864, the appropriation to public use of land settled upon and occupied by a citizen of the town at the time the Act was passed? No; such a construction would defeat the object for which the Act was passed, viz: protection of the settler. (See the case last before cited.)

No dedication can be *presumed* from *use,* as there never was a user of the land or of any part of it by the public.

There is no *express* grant of the *use* claimed. The land was not reserved from *settlement* and *sale* by Congress.

In *Trustees for Vincennes University* v. *State of Indiana* (14 How. U. S. 274), *The City of Cincinnati* v. *The Lessees of White* (6 Peters, 433), *Barclay* v. *Howell's Lessee* (6 Peters, 498), and *Wilcox* v. *Jackson* (13 Peters, 498), cited by appellant, there was an *express consent* by the owner, and the *intention* of the owner to create the use was clear.

In *New Orleans* v. *The United States* (10 Peters), also cited by appellant, there was an undisputed *user* from 1724 until the time of trial. But in the present case there was no *express consent* of the *owner* or *occupant* and no *user*. The *authority* of the owner, and his *consent* to the use, must be clear, and I insist that the acts of the Government were not sufficiently unmistakable in their purpose and decisive in their character to sustain the presumption of a grant. (*Commonwealth* v. *Newbury*, 2 Pick. 51; *Carpenter* v. *Gwynn*, 35 Barb. 295, 406; *Proctor* v. *Lewiston*, 25 Ill. 153; *Gowen* v. *Philadelphia Exchange Co.* 5 Watts & S. 141; *Poole* v. *Huskinson*, 11 Mees. & W. 827; and see *Stacey* v. *Miller*, 14 Mo. 478; and *Phipps* v. *The State*, 7 Black, 515, cited in *Harding* v. *Jasper*, 14 Cal. 648.)

The question, whether defendants acquired any interest in the land by means of the map and alleged proceedings, must depend exclusively upon the laws of the United States; when the title has passed, it then becomes subject to State laws. (*Wilcox* v. *Jackson*, before cited.)

CROCKETT, J., delivered the opinion of the Court:

The only question for our decision on this appeal is, whether or not the demurrer to the answer was properly sustained. The land in contest is a strip about twelve feet wide and four hundred and six feet eight inches long, which the defendants in their answer aver to be a part of Howard street, in the City of Petaluma. The plaintiff claims that it is a portion of a larger parcel, which for many years prior to the 1st day of March, 1867, and up to the month of May, 1867, was in the actual, exclusive and *bona fide* occupation of J. B.

Southard, who sold and conveyed the same to the plaintiff after the 1st March, 1867, and in May, 1867, put the plaintiff into the actual possession, and he has ever since remained in possession. On the 1st March, 1867 (Statutes 1866-7, p. 418), Congress passed an Act whereby it relinquished and granted to the corporate authorities of the Town of Petaluma all the right and title of the United States to the lands situate within the corporate limits of the town, "in trust for and with authority to convey so much of said land as is in the *bona fide* occupancy of parties upon the passage of this Act, by themselves or tenants, to such parties," excepting from the grant, however, any reservation of the United States, and with a proviso that the grant shall not prejudice any valid adverse right, nor preclude a judicial investigation and adjustment thereof. It is averred in the complaint that at the date of the passage of this Act the land in controversy belonged to the United States, and that Southard, the plaintiff's grantor, was in the *bona fide* occupation thereof ; and it is therefore claimed that the corporate authorities of the town hold the legal title in trust for the plaintiff, who prays that they be compelled to convey it in execution of the trust. It also appears from the complaint that the City of Petaluma was duly incorporated by an Act of the Legislature, approved April 12th, 1858 (Statutes 1858, p. 140), and that the premises in contest were included within the corporate limits of said city ; but it is not averred that said premises formed any portion of a municipal subdivision of said city as incorporated.

That the complaint states a *prima facie* case for the plaintiff, can admit of no doubt; and it remains to be considered whether any of the material averments are denied by the answer, or sufficiently met by matters in avoidance. It is not pretended that any material averment of the complaint is denied, except the allegation that on the first of March, 1867, the date of the passage of the Act of Congress above mentioned, the land belonged to the United States. In one of its paragraphs the answer denies title in the Government at the time of the passage of the Act; but the whole answer must be construed together, and we cannot eliminate a single

paragraph and give effect to it as a denial, when it appears from the context and other portions of the answer that the denial was intended to be hypothetical, and was based on other facts which are stated to have divested the title of the Government. The answer admits the title was in the Government up to the month of December, 1865, and then proceeds to show by what process it is claimed to have been divested prior to March, 1867, to wit: by appropriate proceedings under the Act of Congress of July 1, 1864, generally known as the "Town Site Act." (Statutes 1864, p. 343.) Fairly construed, the answer admits the title was in the Government on the 1st March, 1867, unless it was divested by the proceedings under the Act of July 1, 1864. The only remaining question is, whether these proceedings, as stated in the answer, had the effect in law to rebut the *prima facie* case made by the complaint. In determining this question it must be borne in mind that the City of Petaluma was founded on public land, and was incorporated in 1858, with boundaries including the land in contest, and in legislating in respect to towns which had already grown up on the public domain, and others thereafter to be established, Congress had in view two objects, to wit: First—To protect the equitable rights of those in the *bona fide* occupation of lots in towns already established, and to enable persons to acquire small parcels at a nominal price in towns thereafter to be located; Second—To enable the inhabitants of the existing or proposed town to establish proper streets, blocks and squares, adapted to the particular locality. In *Jones et al.* v. *The City of Petaluma* (36 Cal. 230), we say the effect of the Act of July 1st, 1864, was "to ratify and confirm the use to which the land had been put by cities and towns, for the purposes of streets, squares and alleys, and to permit such use in the future by providing for the sale of *lots* only. It was a dedication to public use of so much of the public land as had theretofore been appropriated to streets, squares and alleys, and a license for like appropriations in future. Such being the object and effect of the statute, if the land in question was public land—and by public land we mean land to which no private right had

attached at the time the steps in question were taken—we are unable to perceive why the City of Petaluma did not acquire a right to it, as a public square ; and if so, the plaintiffs could not thereafter, whilst it so remained, acquire a *bona fide* occupancy, within the meaning of the Act of 1867, which obviously refers only to land in lots, and not to land in streets, squares and alleys."

We are quite satisfied with this construction of the Act; and applying these principles to the case at bar, we proceed to inquire whether it appears from the pleadings, that the plaintiff's case is within them.   If the land in contest was a part of one of the streets in Petaluma, as laid down on the plan of the town, when the occupation of Southard, the plaintiff's grantor, commenced his occupation of it, was not *bona fide* within the meaning of the Act of March 1, 1867, and the plaintiff has no case.   On the other hand, if it was not then included in any street, but was a part of a lot, block, or other municipal division, intended for private and not for public use, and if, whilst it remained in that condition, Southard commenced and thereafter continued to occupy it up to the time of his sale and conveyance to the plaintiff, his occupation was *bona fide*, and his equity was confirmed by the Act of March, 1867.   In other words, in attempting to avail themselves of the provisions of the Act of July 1, 1864, the Trustees had no power to change the plan of the town in such manner as to convert into a street, alley or public square, land which before then, under the previous existing plan, was a municipal subdivision, intended for private use, and actually occupied for that purpose.   As against the occupant not consenting thereto, the attempt to open a new street through his premises, or to enlarge an old one so as to infringe upon them, or to convert the land in his possession into a public square or park, finds no warrant in the Act of July 1, 1864.   The map which they were authorized to make, was a map representing the *existing* streets, alleys and squares, and such others as the occupants of the property might consent to.   But it was not within the contemplation of the Act that the persons getting up a map of an existing town might wholly disregard the

former plan, lay out new streets, alleys and squares, upon property before then devoted to private use, without the consent of the occupants. Such a power, in the hands of a few persons proceeding to secure the benefits of the Act of July 1, 1864, to an already existing town, would have been liable to the grossest abuses, and destructive of the private rights which the Act was mainly designed to foster.

The answer does not aver that the premises in contest were a part of Howard or any other street, prior to December, 1865, when the proceedings were commenced under the Act of July 1, 1864. On the contrary, the allegation is, "that about the month of December, 1865, the said land last hereinbefore described (the land in contest), and every part thereof, *became, and ever since has been and still is,* a part of a public street, to wit: Howard street, in the said City of Petaluma, and *was then dedicated to public use.*" This we understand to be an admission that it then became a part of Howard street for the first time, by virtue of the proceedings then commenced. But Southard then was, and for several years had been, in the *bona fide* occupation of it, as private property, under the then existing city organization; and it is not denied by the answer that up to that time it had not been included in any existing street.

For the reasons already discussed, the rights of Southard or his vendee could not be impaired by the attempt to establish a new street or enlarge an old one so as to infringe upon his occupation.

Judgment affirmed.