MARY A. RATHBONE v. WILLIAM A. STERLING, *et al.*

TOWN SITE; *Possession, Title.* When a town site is entered by the probate judge, he takes the title in trust for the benefit of the occupants, and when a lot is continuously in the actual possession and occupancy of one party, he is not deprived of his right thereto by an award of the commissioners and a subsequent deed from the probate judge to another party. The award of the commissioners is not such a judicial decision as concludes his rights.

*Error from Marion District Court.*

EJECTMENT, brought by *Rathbone* against *Sterling* and another, to recover lots 9 and 10, in block 84, in the town of North Peabody, in Marion county. Trial at the April Term, 1880, of the district court, and judgment for the defendants. The plaintiff brings the case here. The opinion states the facts.

*Frank Doster,* for plaintiff in error.
*L. F. Keller,* and *F. H. Kollock,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action of ejectment for lots in the town of Peabody. The record title was in plaintiff, and consisted of a patent to the probate judge in trust for the occupants, and conveyance from him made upon the report of the commissioners. Defendants showed an actual and continued occupancy. The question therefore is, as to the effect of the action of the commissioners and the subsequent conveyance by the probate judge. On the one hand, it is contended that their action is judicial, and unless reversed in appellate proceedings, or set aside for fraud, etc., is conclusive. This claim is denied by the defendants, who insist that their actual occupancy gives them rights of which they cannot be deprived by any action of the commissioners. The question is of course important, whether the amount of property involved in this case be much or little. We have had several townsite cases before us, and while this question has never been distinctly presented, it is evident from the opinions filed in those cases that we have at least assumed the claim of defendants to be correct. Thus, in *Winfield Town Co. v. Maris,* 11 Kas. 151, we said: "The moment the land is entered, the trust vests an absolute right in the beneficiaries. . . . It [the legislature] cannot under a pretense of providing rules for the execution of the trust change its character, or deprive those for whom it is intended of any benefits of the trust."

In *Allen v. Houston*, 21 Kas. 199, comparing the action of city authorities with that of the probate judge and commissioners, this language was used: "Of course, they might make mistakes, but so might the probate judge and his commissioners; and they would be no more likely to make mistakes than he or his commissioners would. But mistakes would not be fatal, by whomsoever they might be made. Mistakes could not destroy the rights of the occupants. Mistakes could not abrogate the right of an occupant to his property. But such mistakes might be corrected in any proper court of justice."

Still, we are not concluded by any such expressions as these, for the question now presented was not before us, and received no distinct examination or special consideration. The act of congress under which the entry is made by the probate judge, provides that it be made "in trust for the several use and benefit of the occupants thereof, according to their respective interests, the execution of which trust as to the disposal of the lots in such town, and the proceeds of the sales thereof to be conducted under such rules and regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated." (14 U. S. Stat. at Large, p. 541.) The state law (Comp. Laws 1879, p. 972) provides that after the entry the probate judge shall appoint three commissioners who shall cause a survey to be made, then give thirty days' notice in the papers, and then shall "proceed on the day designated in such publication, to set apart to the persons entitled to receive the same, the lots, squares or grounds to which each shall be entitled, according to their respective interests, *including in the portion or portions set apart to each person, or company of persons, the improvements belonging to such persons or company.*" The commissioners are then required to levy a tax on all the lots and improvements according to their value, to pay all costs and expenses, and no deed is to be made until such tax is paid.

It is evident that controversies of the nature of this one may arise in at least three different classes of cases: first,

where the lot is in the sole possession and occupancy of one party, and the award and deed are to another; second, where the lot is occupied by two parties, and the award and deed are to one of them; third, where the lot is vacant and unoccupied, and awarded and deeded to one party on account of the value of his improvements and interest in the town, and is claimed by another party on account of the ownership of his improvements on the town site. Now, much of the argument and many of the authorities of counsel for plaintiff in error tend to sustain the conclusiveness of the action of the commissioners in the last class of cases. There is a discretion vested in them : thus, if there be a thousand lots, and one hundred persons in actual occupation of one lot each, the extent of their interest depends, partially at least, on the value of their respective improvements, so that their interests may not be equal. But however those interests may be determined, no one has a fixed and vested right to any particular vacant lot. Whether each shall receive nine vacant lots, or one more than another, no one can say that he selects and owns any single vacant lot. To which of the occupants that lot shall be awarded, must in the first place at least rest in the discretion of the commissioners. Perhaps that discretion may be conclusive. The case of *Lownsberry v. Rakestraw*, 14 Kas. 151, cited by counsel, may cover this question. In that case it appeared that the chiefs and head-men were to designate the half-breeds up to the number of twenty-five, who should be granted lands. Their discretion alone guided in the selection. It was held that their action was conclusive. No other half-breeds could challenge it or take lands. The case of *The United States v. Arredondo*, 6 Pet. 729, is upon the same principle. It is unnecessary, however, to determine that question in this case, for here the controversy arises in the first class of cases, *i. e.*, between the sole occupant of a lot and a party not in occupation, to whom went the award and deed. We understand the scope of the act of congress, as well as of the state statute, to be to secure to each occupant the lots actually occupied by him. This is a fixed

and vested right, something not resting in the discretion, or depending upon the award of the commissioners. The commissioners are to examine and ascertain who are occupants, and what lots they occupy. They do not create the right; they simply inquire as to existing rights. Their report is *prima facie* evidence, but their action is not conclusive. Even if it were conceded that they are a *quasi* judicial tribunal, their decision and award partaking of the nature of a judicial determination, still that would not settle the conclusiveness of their action. Many determinations in courts, and of unquestionably judicial nature, are not final and conclusive, and do not bar subsequent inquiry and investigation. Thus, generally, the rulings on motions are only *prima facie*, and not conclusive in their effect. (*Benz v. Hines*, 3 Kas. 390; *White-Crow v. White-Wing*, 3 Kas. 276; *Watson v. Jackson*, 24 Kas. 442.) So also in respect to the ruling on the trial of a right of property. (*Sponenbarger v. Lemert*, 23 Kas. 55; *Graves v. Butcher*, 24 Kas. 291; *Dilley v. McGregor*, 24 Kas. 361.)

We do not doubt the power of the legislature to provide for a contest and decision in the first instance, and before the probate judge or the commissioners, and to give to such trial all the force and effect of a regular trial before a court. Such was the provision in the law of 1858. Sections 7 and 8 of that act (Comp. Laws 1862, p. 891) authorized a contest, a trial, summoning of witnesses, hearing of testimony, and appeal to the district court. The present statute omits all these provisions. What inference is fairly to be drawn from this change? It seems to us that the legislature intended that there should be no formal trial or conclusive adjudication; that as to such questions as arise in this case, their award should be simply *prima facie* evidence of occupancy and right. The officers are strictly commissioners, and not a court. They inquire into and report facts; they do not decide disputes or render judgments.

Our conclusion then is, that in a case in which there was a single occupant of a lot, the award of the commissioners and

the subsequent deed of the probate judge are not conclusive against the right of the occupant.    In this case there are no questions of estoppel or notice to be considered, and therefore the judgment must be affirmed.

All the Justices concurring.