HALL et al. v. NORTH OGDEN CITY et al.
(WYATT et al., Interveners).

No. 6834.   Decided December 20, 1946.   (175 P. 2d 703.)

See 50 C. J., Public Lands, sec. 111; 16 Am. Jur., 361.

*Thatcher & Young* and *Parley E. Norseth,* all of Ogden, for appellants.

*Samuel C. Powell* and *Derrah B. Van Dyke,* both of Ogden, for respondents.

WADE Justice.

Plaintiffs bring this action to enjoin the town of North Ogden from taking certain strips of land and opening up streets thereon without condemning or paying therefor. Plaintiffs are individuals who severally claim to own certain parcels of such lands. It is conceded that the respective plaintiffs and their predecessors have used and occupied and had fenced in with a substantial fence and had in their possession and now continue to so hold such lands. It was stipulated on the trial that there never have been any streets opened up or used as such by the public thereon, but according to a map or plat thereof, dated and filed in the Weber County Recorder's office on April 27, 1870,

such lands were platted as streets. This matter is now before us on rehearing; the original decision is *Hall* v. *North Ogden City*, 109 Utah 304, 166 P. 2d 221; for a more complete statement of the facts see both prevailing and dissenting opinions.

Since the lands in controversy have been in the peaceable, notorious and open possession of the plaintiffs and their predecessors for many years, in order to prevail, the town must show some right or title to these lands under proceedings of the Federal Townsite Act of 1867, or a dedication of such lands to the public for the use of streets by the owners thereof under such Act. So our first problem is to determine who became the owner of such lands through the Townsite Act.

North Ogden is a small town directly north of the City of Ogden. Three families first settled there in the Autumn of 1850; they spent that winter in Ogden and returned with seventeen other families the next spring. That year they cleared a large farming field and raised crops thereon, built log houses and remained there during the next winter. The town has continued to be occupied and has grown to the present time. It was incorporated in 1934 and had a population of 1,645 in 1940. See Inventory of the County Archives of Utah, No. 29, Weber County, PP 12, 16, 21 and 27.

Prior to October 16, 1869, F. D. Richards, probate judge of Weber County, as County Judge under the Townsite Act, entered under that Act the townsite of North Ogden which had been previously settled in the land office for the use and benefit of the occupants thereof. On the above mentioned date plaintiffs' predecessors filed in the probate court their respective claims to the lands of plaintiffs; on the same day their claims were recorded they made proof thereof and were adjudicated to be the owners of the lands claimed. In all of these claims and adjudications and in all subsequent conveyances of such lands through which plaintiffs deraign their ownership such lands are described as one or more or a part of a designated lot or lots of a

designated block, or one or more or a part of a designated block, in "Plat 'A' of North Ogden Survey."

Plaintiffs contend that the evidence is conclusive that at and prior to the time the townsite was entered and the time when these claims were filed, plaintiffs' predecessors were occupying and had fenced in all the lands in controversy and that they and plaintiffs have continued to so occupy such lands to the present time. Since it was stipulated that, except for one small tract, none of such lands have ever been opened up or used by the public as streets, and the defendants produced no evidence that the excepted tract had ever been so used, and since by the positive testimony of many witnesses, comprising the oldest residents of North Ogden at the time of the trial, one of whom was then eighty years old, and was five years old in 1869, each of whom testified that he had been born and raised and had lived all of his life in the neighborhood of these lands, had known this property as long as he was old enough to know any property, and that none of such lands had during any of that time been opened up or used by the public as a street, but that during all of that time all the lands in controversy had been fenced in along with the other lands of the plaintiffs and their predecessors the same as such lands are now fenced in and being used and occupied, and since such lands had been settled long before they were entered as a townsite giving ample time for fencing and establishing of the boundary lines, there is only one reasonable inference that can be drawn therefrom. That is plaintiffs and their predecessors have had fenced in and have used and occupied all of the lands in controversy since prior to 1869 up to the present time.

Under the facts as shown, did the plaintiff's predecessors become the owners of the controverted lands? The material parts of the Townsite Act of 1867, c. 177, 14 Stat. 541, R. S. 2387, 43 U. S. C. A. § 718, provide:

"That whenever any portion of the public lands of the United States have been or shall be settled upon and occupied as a townsite, * * * it shall be lawful, in case such town shall be incorporated, for the

corporate authorities thereof, and if not incorporated for the judge of the county court for the county in which such town may be situated to enter at the proper land office * * * the land so settled and occu- pied, in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust * * * to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated: * * *. And provided, further, That any act of said trustees not made in conformity to the rules and regulations herein alluded to shall be void; * * *."

Pursuant to this grant by Congress to the local legislative authority of the power to make regulations for the dis- posal of the townsite lands, our Territorial Legislature en- acted Sections 1166 to 1178, C. L. U. 1876, which requires that notice of the entry of a townsite be given, and that all persons claiming ownership, occupancy or possession or the right thereto or any interest in any of the lands of such townsite, shall within six months deliver to the clerk of the probate court a statement of such claim. It further provides in Section 1168 that:

"* * * all persons failing to make and deliver such statement within the time limited in this section shall be forever barred the right of claiming or recovering such land, or any interest or estate therein, or any part, parcel or share thereof, in any court of law or equity * * *."

Defendant contends that plaintiffs' predecessors failed to deliver their claims within the time required by the above statute and therefore are barred from maintaining this action. Both Nevada and Colorado have similar statues and both of those states have held that such failure does not pre- vent the occupant from defending his right to such prop- erty. *Treadway* v. *Wilder*, 8 Nev. 91; *City of Pueblo* v. *Budd*, 19 Colo. 579, 36 P. 599; also see *Rathbone* v. *Sterling*, 25 Kan. 444.

*Treadway* v. *Wilder*, supra, was an action in ejectment. Plaintiff relied on a deed from the County Judge as trustee under the Townsite Act of 1844, 5 Stat. 657, which as far as the problems here are concerned is similar to the Town-

site Act of 1867. Defendant produced evidence to the effect that he was the occupant of the premises in question and had been continuously for a long time prior to the time when they were entered under the Townsite Act. The trial court struck this evidence from the record and defendant appealed. The Supreme Court held that this evidence was admissible, but that the question of the validity of the deed was not before it, and continued:

"* * * but as the case will probably be retried, it may not be amiss to say that it would seem that the deed of the trustee is not conclusive. If not given to an occupant or one having the right of occupancy, that fact may be shown; and then the deed falls as absolutely 'void and of no effect'. The federal statute of 1844, under which the trustee purports to have acted in this instance, provides for the disposition of townsites to 'occupants' by a trustee or trustees acting under rules to be established by the proper legislature; also, 'that any act of said trustees not made in conformity to the rules and regulations herein alluded to shall be void and of none effect.' "

The court then proceeds to point out that the Nevada statute containing the said rules and regulations for that state, requires that said property be deeded to the person or persons having possession of such property, and continues:

"* * * If, then, respondent was neither an occupant, nor had the right of occupancy, he was not entitled to receive a deed from the trustee, and the same was 'void and of none effect' as having been made contrary to the rules and regulations by the legislature established. This the appellant would have the right to prove; though not to put title in himself as the real occupant entitled to the deed of the trustee, for he is barred of all right by section fourth of the act, he having presented no statement of claim within the specified time; the act as to such neglect reading, 'and all persons failing to sign and deliver such statement within the time specified in this section shall be forever barred the right of claiming or recovering such lands, or any interest or estate therein, or any part, parcel, or share thereof, in any court of law or equity.'

"But although so barred, the proof would be competent to show that respondent has no title, in which case he must fail of recovery for the land described in trustee's deed, as that must be had not upon the weakness of appellant's but upon the strength of his own title. He relies in this case upon strict title. If in any manner it can be shown

that such has no existence, that fact inures to the protection of the appellant in peacable posession, though it may not show any affirmative right or title in him."

The facts in that case are somewhat different than in our case, but they present a holding that although the defendant therein had failed to present a statement in writing of his claim to the lands in question, still he was not barred from proving that he was the occupant of the land at the time the entry was made by the County Judge, and that such proof would defeat the claim of one who had received a deed from the County Judge as trustee who was not then in possession of such lands since such deed was void.

*City of Pueblo* v. *Budd,* supra, is a case very similar in facts to our case. There, as here, plaintiffs brought the action to enjoin the city from entering upon and opening up as a street certain lands which they then occupied, and which they and their predecessors had occupied since 1867, prior to the time when the County Judge entered such lands under the Townsite Act of 1867. There after entering the lands in the land office, the County Judge had caused a plat thereof to be made and filed, platting such lands into lots, blocks, and streets, and the property which plaintiffs claimed was platted therein as a street although it was then occupied by plaintiffs' predecessors, and had never been opened up or used as a street by the public. Originally this property had been occupied by one of the plaintiffs, Mrs. Budd and her husband. The husband died in 1885, and she succeeded to his claim as his heir at law, and later sold and conveyed by metes and bounds, a one-third interest thereto to one Elaspass, who jointly occupied the premises with her from then until 1890 when the city attempted to take this land and open up a street thereon. No deed to this property had ever been made to either plaintiff or the city, and neither plaintiffs nor their predecessors had ever filed a statement of their claim thereto as required by the Colorado statute which was similar to ours in that it asserted that in case of failure to file such a claim within a

specified time the claimant would be forever barred from claiming or recovering such lands in any court of law or equity. The facts in that care are different from ours in that the plat was prepared by the county judge as a part of the execution of his trust. The plaintiffs there did not file any claim to adjoining lands, and when Mrs. Budd sold an interest in the lands she conveyed the same describing it by metes and bounds. On those facts the court held [19 Colo. 579, 36 P. 601]:

"* * * The entry of the townsite, therefore, being 'in trust for the several use and benefit of the occupants thereof, according to their respective interest,' each of such occupants at the time of entry became, to the extent of their respective holdings, beneficiaries of the trust, and were vested with the equitable ownership of the lot or parcel of land to the extent of their occupancy. *Winfield Town Co.* v. *Maris*, 11 Kan. 128; *Rathbone* v. *Sterling*, 25 Kan. 444. And while the execution of the trust as to the disposal of the lots, etc., was to be conducted under rules and regulations prescribed by the territorial legislature, neither by such regulations nor by an act of the trustee not in conformity with the provisions of the foregoing section could the beneficiary be divested of the right that accrued to him under the trust."

The court then cites and discusses many cases most of which will herein be cited, and distinguishes the case of *Cofield* v. *McClellan*, 1 Colo. 370, on the grounds that in that case the claimant had lost possession of the property, and continues:

"* * * The act of congress grants an unqualified trust to the occupant, and to construe Section 4 of the Territorial Act as providing for a foreiture of this trust upon failure to perform a condition subsequent is to impute to the legislature the design to indirectly divest the interest of the cestui que trust under the guise of providing reasonable regulations for the execution of the trust. This it must be conceded it cannot do directly, and therefore since such construction would render the act nugatory and void, it ought not to be indulged in when the provisions can be upheld as a reasonable regulation in so far as it only bars the remedy to one out of possession. We think the act is clearly susceptible of this interpretation, and that Budd and his wife were vested with an equitable interest in the land in controversy, at the time of the townsite entry that has not been lost by the failure to comply with the requirements of Section 4 of the Townsite Act, and

that the power of the court of equity may be invoked to protect such interest or right against an intruder. * * *"

This case holds squarely that the occupant had an equitable ownership in the property which he was occupying at the time of the entry, that such ownership became a vested right when the lands were entered in the land office, which was granted him by the act of congress, and that thereafter the County Judge under that act held that legal title to the property as trustee for the use and benefit of the occupant who was the beneficiary of the trust, that such vested right was not divested under the rules and regulations of the local legislative authority, for failure to file his claim thereto as long as the occupant remained in possession of the property. The reasoning in that case seems to be unanswerable and is controlling in the present case. Thus plaintiffs were not barred from maintaining this action by that statutory provision.

It is argued that the Townsite Act authorized the local legislature to make rules and regulations on how to determine who were the occupants of the land at the time the entry was made. That pursuant to such authority the Territorial Legislature enacted a system of rules whereby that question could be judicially determined and in accordance with such system that question had been judicially determined against the plaintiffs. Undoubtedly the Townsite Act did authorize the local legislature to enact such a system and pursuant thereto our Territorial Legislature did enact such a system in Sections 1166 to 1178, supra. Under that system notice of the entry must be published requiring all claimant to present their claims within a specified time, and provision was made for the taking of proof of such claims and the determination of conflicting claims. On such proof the probate judge was authorized to adjudicate the claims and to execute deeds in accordance with such adjudications; in case any party was dissatisfied therewith he could appeal to the District Court and ultimately to the

Territorial Supreme Court. Such an adjudication would be binding on the parties thereto.

Was there an adjudication of the occupancy or ownership of the lands here in controversy? The answer to this question is "No." Under such facts no claim to these lands was ever presented. The fact that plaintiffs' predecessors claimed lands adjacent to the lands in controversy and were adjudicated to be the owners and occupants thereof does not have the effect of further adjudicating that they were not the owners or occupants of these lands. Nor did the filing of the 1870 plat have that effect. No claim to these lands adverse to plaintiffs has ever been made, no proof thereon has ever been taken and no adjudication thereof has ever been made. Therefore plaintiff is not barred on the grounds of res adjudicata.

It is contended that of necessity, a townsite must have streets, and accordingly the Territorial Legislature indicated that it intended that the lands platted as such should not go to any private individual by the following provisions of Sections 1173 and 1174, C. L. U. 1876:

"That before the * * * judge * * * shall be required to * * * deliver any deed of conveyance thereof * * * to any person, * * * such person * * * shall pay * * * to the * * * judge; * * * the sum of money chargeable on the part thereof to be conveyed by such deed to be ascertained by taking the whole amount of the cost of the land of which it is a part, and expenses * * * in the proportion which the area of such lot shall bear to the whole amount of the land entered after deducting the area of all streets, alleys and public grounds in such city or town, * * *."

"That whenever the title to such lands shall be held by the corporate authorities of any town or city, all lands designated for public use by such corporate authorities as streets, lanes, avenues, alleys, parks, commons and public grounds, shall vest in and be held by the corporation absolutely, and shall not be claimed adversely by any person, * * * whatsoever; and the judge of probate who shall have entered any lands in trust for any town or city which may afterwards become incorporated, shall, under the same conditions, convey by deed to the corporation thereof the lands designated for the use of the public as aforesaid; that in case of death or disability of the judge * * * before the complete execution of such trust, the same shall vest in his

successor in office, who shall proceed with the execution of the same in the same manner, and under the same conditions imposed by this act upon the judge * * * receiving the trust in the first instance."

By these provisions the legislature recognized the necessity of having streets, parks and other public grounds, and authorized the corporate authorities to designate such grounds, as were at the time of the entry being so used, for public use and to hold the title thereto for such public use absolutely. But that did not authorize the corporate authorities to designate for public use lands, which at the time of the entry were being occupied and used for private purposes, and thereafter hold the title thereto absolutely without the consent of the occupant. We do not believe that the legislature so intended. A provision to that effect would be contrary to the provisions of the Townsite Act and therefore void. The Townsite Act expressly authorized the judge to enter the lands so settled and occupied in trust for the use and benefit of the occupants thereof according to their respective interests. Congress thereby expressly provided that the occupants were the beneficiaries of this trust, and as soon as the entry was made under that act the occupants became the equitable owners of the lands which they then were occuping and using and the local legislature was not authorized to change the beneficiaries or otherwise dispose of the property. The local legislature was only authorized to make rules and regulations for the execution of the trust as created by the act of congress, it was not authorized to create a new trust or dispose of the lands contrary to the interests of the occupants. The Townsite Act provides that the trustee hold the lands for the "use and benefit of the occupants thereof, according to their respective interests." Thus their interests in the land came as the result of their occupying it and by the act of congress they were granted the right to occupy and use the land in the manner they had previously done and the territorial legislature had no authority to deprive the occupants of such rights. Our act as herein construed is not in conflict with the Townsite Act. *Parcher* v. *Ashby*, 5 Mont. 68, 1 P.

204, same case *Ashby* v. *Hall,* 119 U. S. 526, 7 S. Ct. 308, 30 L. Ed. 469; *Bingham* v. *Walla Walla,* 3 Wash. T. 68, 13 P. 408; *City of Helena* v. *Albertose,* 8 Mont. 499, 20 P. 817; *Scully* v. *Squier,* 13 Idaho 417, 90 P. 573, 30 L. R. A., N. S., 183; Id., 215 U. S. 144, 30 S. Ct. 51, 54 L. Ed. 131; *City of Pueblo* v. *Budd,* 19 Colo. 579, 36 P. 599; *Alemany* v. *Petaluma,* 38 Cal. 553; *Cerf* v. *Pfleging,* 94 Cal. 131, 29 P. 417; *Guffin* v. *Linney,* 26 Kan. 717; *City of Globe* v. *Slack,* 11 Ariz. 408, 95 P. 126; *Treadway* v. *Wilder,* supra.

These cases hold that the trustee under the Townsite Act hold the legal title to the lands for the use and benefit of the occupants according to their respective interests. That the respective interests of the occupants was to use and occupy the lands in the manner they had previously done. That the lands which had previously been used for streets and alleys and for other public purposes must be held by the trustee for the use of the occupants for the continuation of such use, and the lands which were being then occupied and used for private purposes were to be held by the trustee in trust for the occupant thereof for his private use, benefit, and ownership thereof, and that the trustee had no authority to deprive such occupant of such use and ownership in such lands and that any attempt to do so whether pursuant to legislative rules and regulations or contrary thereto are null and void and did not have any such effect. Many of these cases are distinguishable in their facts from the case at bar but all of them adhere to these principles.

In *Ashby* v. *Hall,* supra, Scotts addition to the city of Helena, Montana was platted into lots and blocks and streets and alleys, as early as 1866. It was entered under the Townsite Act in 1869, and under the direction of the trustee, and pursuant to the regulations of the local legislature a new plat was made wherein a strip of land 16 feet wide which at the time of entry was being used by occupants of other lots as an alleyway was platted as a part of another adjoining lot and deeded as such to the occupant thereof, who by placing fences across it closed it to the use of the other occupants. The other occupants brought the action

to enjoin the occupant receiving the deed thereto from interfering with their use of the alley as such. Both the Supreme Court of Montana and of the United States held in favor of the plaintiffs and in so doing said, 7 S. Ct. 308-310:

"The power vested in the legislature of the territory in the execution of the trust, upon which the entry was made, was confined with regulations for the disposal of the lots and the proceeds of the sales. These regulations might extend to provisions for the ascertainment of the nature and extent of the occupancy of different claimants of lots, and the execution and delivery to those found to be occupants in good faith of some official recognition of title, in the nature of a conveyance. But they could not authorize any diminution of the rights of the occupants when the extent of their occupancy was established. The entry was in trust for them, and nothing more was necessary than an official recognition of the extent of their occupancy. Under the authority conferred by the Townsite Act, the legislature could not change or close the streets, alleys, and blocks of the town by a new survey. * * *

"The plaintiffs taking the lots they occupied, with the right of way appurtenant thereto, that is, over the alley on which the lots were situated, which they had previously enjoyed, the act of the probate judge in conveying the alley to the defendant was illegal and void. * * *"

In *Guffin* v. *Linney,* supra, and *Treadway* v. *Wilder,* supra, for facts of last case see previous discussion, the respective trustees had issued a deed to the lands in controversy to the respective plaintiffs who had never been in possession of the lands. Relying on such deed for their respective titles, the plaintiffs brought actions in ejectment to obtain possession of the lands which had been deeded to them against the defendants who were the respective occupants at and prior to the entry under the Townsite Act, and who had continued to occupy the same up to the time suit was commenced. Neither defendant had presented his claim to the property to the trustee. In both cases the court held that since neither of the plaintiffs had ever been in possession of the property deeded to him and since the defendants had been in continuous possession of such property from the time of the entry to the time of commencing the suit, the deeds issued to the plaintiffs were void and in

violation of the Townsite Act, and the defendants were entitled to the possession of the property.

In *City of Helena* v. *Albertose,* supra, and *City of Pueblo* v. *Budd,* supra, last case was herein previously discussed, the lands in controversy platted as streets under a plat made pursuant to a local statute and under the direction of the trustee, but in neither case was such lands ever opened up or used as such by the public, but had been occupied by the respective plaintiffs and their respective predecessors from prior to the time of entry to the time of commencing the respective actions. In each case the plaintiff who was in possession of the lands brought suit to enjoin the defendant who was the city, from attempting to open up a street over the lands in question. In neither case had plaintiff or his predecessors ever presented any claim to the trustee for a deed to the property and none had been issued. In both cases the court granted the relief prayed for. In so doing, the Montana court said [8 Mont. 499, 20 P. 819]:

"* * * When the patent was issued to the probate judge, he became a trustee of the lands included in said patent, holding the same in trust for the use and benefit of the occupants thereof; which trust must be executed by him in accordance with the laws of the United States creating such trusts, and with the rules and regulations provided by the territorial laws not in conflict with the laws of the United States. These rules or regulations might guide the mode or manner of executing the trust, but they could not substitute one cestui que trust for another. In other words, neither the laws of this territory, nor the act of the probate judge, could deprive any person of the land occupied by him at the time when the probate judge made the entry for the townsite, and give such land to one who was not an occupant thereof; and any attempt so to do would be null and void. Undoubtedly, the laws of this territory providing for a map, and the act of the probate judge in accordance therewith, were valid, and not in conflict with the laws of the United States, when such map designated and established as streets those portions of the townsite which had theretofore been used as public streets; but, when the probate judge undertook to establish by a map a street over lands actually occupied by individuals as residence when the entry was made by the probate judge, his act was in conflict with the proper execution of his trust, which was to convey the land to occupants when there were

occupants, and not to others, and the public had no right as against such occupant. The act of the probate judge, therefore, was void, at least so far as it attempted to deprive the occupants of their interest in lands occupied by them, and such act could give to the public no title to the premises, against the will of the true occupants. * * *"

*Bingham* v. *Walla Walla,* supra; *Scully* v. *Squier,* supra; *Alemany* v. *Petaluma,* supra; and *Cerf* v. *Pfleging,* supra, except the Scully case, were cases where the plaintiff brought suit to enjoin the city from taking lands in his possession and opening up a street thereon. In the Scully case the plaintiff was an adjoining owner who sued to enjoin the occupant from encroaching upon the street. In each case the occupant and his predecessors had occupied the premises in controversy together with and as a part of a larger tract of land continuously from a time prior to the entry of such lands under the Townsite Act to the time when the suit was commenced. The lands in controversy were platted as streets in a plat made under the direction of the trustee but none of such lands had ever been opened up or used for street purposes and each occupant had received from the trustee a deed to the property which he occupied which was not platted as a street. In some cases it is not shown whether such deed covered the lands which were platted as a street and in others it is clear that the deed did not cover such lands. In the Walla Walla case the trustee expressly refused to give a deed covering the lands which were platted as a street and the occupant orally protested such refusal. In each case the decision was in favor of the occupant. In the Walla Walla case the court said [3 Wash. T. 68, 13 P. 413]:

"While, therefore, the act of 1867 contemplated the existence of streets and alleys in the new towns to which its provisions should apply, it was such streets and alleys as were by common consent used as such,—not paper streets and alleys, to which the occupant had failed to give assent. * * *"

The case of *City of Globe* v. *Slack,* supra, as to this phase of the case is exactly in point. The Globe townsite was

entered in 1882, and thereafter the lands thereof were platted into lots, blocks and streets. When the entry was made one McDowell was occupying what was later platted as Lot 1 in Block 74, and the lands adjoining it were platted as a street, he had a residence on the lot and a barn and closet on what was platted as a street. The trustee deeded to him the lot which he was occupying but did not include therein the land which he was occupying which was platted as a street and he accepted such deed and paid the fee therefor. Thereafter, McDowell sold and conveyed to plaintiff Slack his interests. In the deed he described the land only as Lot 1 in Block 74, but did not describe the lands which were platted as a street, but Slack took possession of the lands occupied by McDowell which were platted as a street as well as the lands in the lot, and later built a fence around all of them. The lands platted as a street which were occupied by McDowell and Slack were never used for street purposes, the city threatened to enter and open up the street thereon and Slack sued to enjoin the city therefrom. In holding in favor of Slack the court said [11 Ariz. 408, 95 P. 127]:

"Neither the act of Congress nor that of the territorial Legislature specifically make provision for the dedication of streets, nor for the disposal by the probate judge of any part of the lands for other public purposes. The occupants, however, had a vested interest in the streets and alleys as they existed at the time the townsite was entered, and the trustee had no authority to destroy them. (Citing *Ashby* v. *Hall*, supra). But no authority was given to establish new ones. \* \* \* In attempting to create additional streets, however desirable such a general plan may have been, they exceeded their authority, and the streets which they platted, existing only on paper, were not lawfully established. (Citing cases). Nor does it appear that there has been any dedication of the land for street purposes by the occupants. \* \* \*"

It is argued that this rule only applies where the ground sought to be taken is covered by a building, and not where it is farm land as in this case. In some of the cases above cited all of the land sought to be taken for street purposes were occupied by a building at the time the entry was made,

but in all except the Scully case part of the ground was not so occupied but was only surrounded by a fence. In several of them the ground was a tract covering considerable acreage of farm land, and in some there is no evidence that any building had ever been erected on the ground sought to be taken. We therefore conclude that it is sufficient occupancy to have the land fenced in, and being used as farm land at the time of the entry.

Thus it is clear that the equitable ownership of these lands were at the time they were entered, in the plaintiffs' predecessors. Had this ownership been transferred to the town of North Ogden? If so, it must have been by dedication by the owners thereof through the filing of the plat by the county surveyor, by plaintiffs' predecessors filing their claims in the probate court without describing therein the lands platted as streets, or by making later transfers by reference to the North Ogden plat, or by all of these facts together.

Before a dedication of a street to the public use can be effected there must either be an intention to so dedicate such lands on the part of the owner thereof or he must act in such a manner as to be estopped from denying such intention. Such intention may be shown either by oral or written declarations or it may be inferred from the surrounding facts and circumstances of the case but in all cases such intention must be clearly manifest. 16 Am. Jur. 361, Dedication, Section 17; 26 C. J. S., Dedication, § 12, p. 64; *Harding* v. *Jasper,* 14 Cal. 642, 643. There being no showing that the owner had anything to do with the preparing or filing of the plat that fact does not tend to prove an intention on the part of the owners to dedicate the streets platted therein to the public use. Nor does the further facts that the original claims and later transfers of plaintiffs' lands all described them by reference to the plat, under the facts and circumstances of this case, have such a tendency. In *Sowadski* v. *Salt Lake County,* 36 Utah 127, 104 P. 111, 117, we quoted with approval from 13

Cyc. 455, which is restated in about the same words in 26 C. J. S., Dedication, § 23, p. 78, as follows:

"Where the owner of real property makes a plat of it and divides the land into lots and blocks, intersected by streets and alleys, and sells any of the lots with reference to such plan, or where he sells with reference to the map of a town or city, in which his land is so laid off, if the reference is not made merely for the purpose of description, he thereby manifests an intention to dedicate the streets and alleys to the use of the public. The reason for the rule is that the grantor, by making such a conveyance of his property, induces the purchaser to believe that the streets and alleys will be kept opened for their use and benefit, which use included the right in purchasers that all persons whatsoever as occassion may require or invite may so use the streets; and having acted on the faith of the grantor's implied representations based on his conduct, he is equitably estopped as well as in reference to the public as to his grantees from denying the existence of the easement, and from appropriating the land so dedicated to a use inconsistent with that represented by the map on the faith of which the lots are sold."

A holding to that effect in that case was not necessary to the decision as we found that there had been an express statutory dedication of the lands there in question and therefore our approval of that language was mere dicta. But assuming that the law as therein stated is correct, it does not help the defendants in this case because the facts here do not bring this case within the rule.

The above quoted rule clearly contemplates a dividing of a larger tract of land into smaller lots and blocks intersected by streets thereby made necessary for the convenient use and enjoyment of such lots or blocks. And there must be a sale of one or some of such lots which requires the use of one or some of such platted streets for the convenient use and enjoyment of such lot or lots as sold. In addition thereto, there must be a holding out or representation to the purchaser by the owner that such street or streets will be kept open for the use of the public so that he will be able to conventiently use and enjoy the lot or lots so purchased, and the owner must either prepare and file the plat himself or must adopt a plat made by some one else by a conveyance of some of the lands with reference

thereto. The mere conveyance by the owner of a tract of land describing it by reference to a map or plat thereof without the other elements above mentioned neither shows an intention to dedicate the streets therein platted nor estops the owner from denying such intention.

Here there was a platting on paper into lots and blocks intersected by streets of some farms which were fenced in, being occupied, used and cultivated for the growing of crops and for homes, which had access and were adjacent to public roads. Under these circumstances the then owners and occupants thereof filed their claims thereto under the Townsite Act in the probate court describing their lands as certain lots and blocks in a certain plat without making any mention of the platted intersecting streets, later a plat is filed by the county surveyor, and the probate judge deeded the property to the claimants in accordance with their claims. There is no change in the use or occupation at that time of any of these lands and no new streets were opened up. Clearly that does not show an intention to dedicate such streets to a public use or estop the owner from denying the same. Thereafter for 75 years, in due course the ownership to these farms was transferred. There is no detailed showing of all of these transfers but the abstract of title to part of the lands of the plaintiffs Hall was introduced in evidence, and it was stipulated that the chains of title to the other lands were similar to that one. In some of the later transfers only a part of the original farm was transferred thus diminishing its size but in none of these transfers were any new streets opened up nor were any lands transferred which did not thereafter adjoin and have access to a public street which was then being used as such, nor was there any showing that in any of these transfers the seller represented to the buyer that any such street would ever be opened up or used as such or that the purchaser desired it to be so opened. There was no sale by any plaintiff to any defendant in this action, and there is no claim made by any defendant that he purchased his property relying on any representation either express or implied by

either of the plaintiffs or their predecessors that such streets would ever be opened up to public use in accordance with the plat. The only mention of any of these streets in any of these conveyances which are shown in the record is the following reservation in the deed of the plaintiffs Hall:

"Reserving to grantors a right of way over a roadway 1 rod wide adjoining said land on the south and being part of the land originally laid out as a street on the recorded plat."

This reservation indicates an intention not to dedicate the street referred to the public use otherwise there would be no need for such reservation. Under these facts and circumstances there is no showing of an intention to dedicate these lands to the public for use as streets, and the reference to the plat was merely for the purpose of description only. *MacNicol* v. *East Coalinga Oil Fields Corp.*, 22 Cal. 2d 742, 140 P. 2d 793; *Harding* v. *Jasper*, supra; *Hayes* v. *Kansas City*, 294 Mo. 655, 242 S. W. 411; *City of Pearsall* v. *Crawford*, Tex. Civ. App., 213 S. W. 327; to the same effect is *City of Globe* v. *Slack*, supra; *Bingham* v. *Walla Walla*, supra; *Alemany* v. *Petaluma*, supra; *Cerf* v. *Pfleging*, supra; some of these cases are distinguishable on their facts but none hold contrary.

In *Tooele City* v. *Elkington*, 100 Utah 485, 116 P. 2d 406, we apparently assumed that any conveyance wherein the lands conveyed are described with reference to a map or plat wherein a street is platted adjacent to such lands, effects a dedication of such street to the use of the public. In support thereof we cited *Sowadzki* v. *Salt Lake County*, supra; and *Wallace* v. *Cable*, 87 Kan. 835, 127 P. 5, 42 L. R. A., N. S., 587. Both of these cases quote the above rule from Cyc. and recognize its limitations above pointed out. In the dissenting opinion on the previous hearing we pointed out the difference in the wording of the conveyance in the Wallace case from that in the present case, also that the Kansas court holds that such conveyance effects a statutory dedication as distinguished from a common law dedication,

which holding is contrary to the great weight of authority on that question. The opinion in the Tooele City case does not disclose sufficient facts to bring it within the rule above quoted which it purports to rely upon, whether such facts were shown in the record we do not know, if not; and the case is in conflict with the decision here reached, it is to that extent overruled.

In the Sowadzki case we held that, even in a statutory dedication of platted streets to the public use, only the surface thereof passed to the public and that the right to use such lands for all other purposes which does not interfere with such public use remained in the owner of the adjoining lands and passed to the successive grantees of such adjoining lands in later conveyances and that outside of incorporated cities highways which were not used or worked as such for a period of five successive years ceased to be such and reverted to the owner of the adjoining lands. Thus in this case, had there been a dedication of these lands to the public use they would have long since reverted to the owners of the adjoining lands since they have never been used or worked. But, if any of these conveyances effected a dedication of these platted streets to the use of the public then each of them had the same effect and the last of such conveyances was made after the town was incorporated. But as above pointed out there was no dedication and therefore no public street ever existed.

In holding that there was no dedication of the streets here in question to a public use, we do not wish to in any way infer that streets which were originally platted as such and since that time have been opened up and used as such with the consent of the occupant thereof, have not been thereby dedicated to such public use. The fact that the occupant allowed them to be opened up and used by the public as such streets would clearly indicate an intention to dedicate the same to that use. The plaintiffs are therefore entitled to have their title to the lands in controversy quieted as against the defendants herein, and defendants enjoined from interfering with plaintiffs' use thereof. The

decision of the trial court is therefore reversed and the case remanded with directions to enter findings of fact, conclusions of law and judgment in accordance with the views herein expressed. Plaintiffs shall recover their costs on appeal.

The judgment entered in this case on February 14, 1946, is set aside.

LARSON, C. J., and McDONOUGH, PRATT, and WOLFE, JJ., concur.